UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY, CIGNA HEALTH AND LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:15-cv-00253-JD-PRC |
| NORTHWEST REGIONAL SURGERY CENTER, LLC, et al., | ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................ 1

II.     FACTUAL ALLEGATIONS ..................................................................... 1

III.    STANDARD OF REVIEW ........................................................................ 5

IV.     ARGUMENT ............................................................................................. 5

    A.  Cigna Is Estopped From Asserting ERISA Restitution And RICO
        Claims ................................................................................................. 5

        1.  Same Plaintiff.............................................................................. 6
        2.  ERISA Restitution Claim............................................................ 7
        3.  RICO Claim ................................................................................ 8

    B.  Cigna Fails To Plead Civil RICO Claims ......................................... 10

        1.  Failure to Properly Allege a Criminal Enterprise. .................... 11
        2.  Failure to Properly Allege Conduct of the Enterprise's
            Affairs. ...................................................................................... 13
        3.  Failure to Plead a Pattern of Racketeering Activity.................. 15
            a.  Failure to Plead Pattern ..................................................... 15
            b.  Failure to Plead Either Mail Fraud or Wire Fraud ....... 16
        4.  Failure to Plead Injury "By Reason of" A §1962 Violation ..... 18

    C.  Cigna's State Law Claims Should Be Dismissed. ............................. 20

        1.  Cigna's State Law Claims Are Preempted By ERISA ............ 20
        2.  Cigna Fails to Plead Fraud......................................................... 22
        3.  Cigna Fails to Plead Aiding and Abetting Fraud ...................... 24
        4.  Cigna Fails to Plead Negligent Misrepresentation.................... 25
        5.  Cigna Fails to Plead Unjust Enrichment ................................... 27

    D.  Cigna's ERISA Claims Fail .............................................................. 28

        1.  Cigna Lacks Standing ................................................................ 29
        2.  Cigna's Equitable Lien Claim Fails to State a Claim .............. 31

    E.  Cigna's Declaratory Judgment Claim Fails ...................................... 33

V.      CONCLUSION....................................................................................... 34

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*188 LLC v. Trinity Indus., Inc.*,
   300 F.3d 730 (7th Cir. 2002) ........................................................................4

*Access Mediquip, LLC v. UnitedHealthcare Insurance Co.*,
   662 F.3d 376 (5th Cir. 2011) .......................................................................27

*Advanced Ambulatory Surgical Center v. Cigna Healthcare of Ill.*,
   2014 WL 4914299 (N.D. Ill. Sept. 30, 2014) ...................................21, 27, 28

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004)....................................................................................20

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)................................................................................18, 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................5

*Asllani v. Board Of Education of the City of Chi.*,
   845 F. Supp. 1209 (N.D. Ill. 1983) ............................................................6, 9

*Bachman v. Bear Stearns & Co.*,
   178 F.3d 930 (7th Cir. 1999) .......................................................................11

*Baker v. IBP, Inc.*,
   357 F.3d 685 (7th Cir. 2004) .......................................................................13

*Bible v. United Student Aid Funds, Inc.*,
   2015 WL 4911412 (7th Cir. Aug. 18, 2015)..................................................16

*Boyle v. United States*,
   556 U.S. 938 (2009).....................................................................................12

*Bridge v. Phoenix Bond & Indemnity Co.*,
   553 U.S. 639 (2008).....................................................................................18

*Browning v. Flexsteel Industries, Inc.*,
   955 F. Supp. 2d 900 (N.D. Ind. 2013) .....................................................12, 13

*Burke v. 401 Wabash Venture LLC*,
   714 F.3d 501 (7th Cir. 2013) .......................................................................10

*Byrne v. Nezhat,*
    261 F.3d 1075 (11th Cir. 2001) ................................................................18

*Cedric Kushner Prom. Ltd. v. King,*
    533 U.S. 158 (2001) ................................................................................11

*Central States, Southeast & Southwest Areas Health & Welfare Fund v.*
    *Neurobehavioral Associate, P.A.,*
    53 F.3d 172 (7th Cir. 1995) .....................................................................20

*Collins v. Ralston Purina Co.,*
    147 F.3d 592 (7th Cir. 1998) ...................................................................22

*Comentis, Inc. v. Purdue Research Foundation,*
    765 F. Supp. 2d 1092 (N.D. Ind. 2011) ...................................................28

*Crichton v. Golden Rule Insurance Co.,*
    576 F.3d 392 (7th Cir. 2009) ...................................................................11

*Crissen v. Gupta,*
    994 F. Supp. 2d 937 (S.D. Ind. 2014) ...............................................11, 12

*Defalco v. Bernas,*
    244 F.3d 286 (2d Cir. 2001).....................................................................15

*Faber v. Metropolitan Life Insurance Co.,*
    648 F.3d 98 (2d Cir. 2011).......................................................................31

*Feltman v. Blatt, Hasenmiller, Leibsker & Moore, LLC,*
    2006 WL 2375379 (N.D. Ill. Aug. 16, 2006) ...........................................5

*Fitzgerald v. Chrysler Corp.,*
    116 F.3d 225 (7th Cir. 1997) ...................................................................11

*Gilldorn Sav. Association v. Commerce Sav. Association,*
    804 F.2d 390 (7th Cir. 1986) .................................................................5, 6

*Gondel v. PMIG 1020 LLC,*
    2009 WL 248681 (D. Md. Jan. 22, 2009) ...............................................12

*Goren v. New Vision International, Inc.,*
    156 F.3d 721 (7th Cir. 1998) .............................................................14, 16

*Hankinson v. Northwestern Mutual Life Ins. Co. ,*
    2012 WL 5286922 (N.D. Ill. Oct. 24, 2012).............................................21

*Hemi Group, LLC v. City of New York*,
  559 U.S. 1 (2010) ................................................................18, 19

*Holmes v. Sec. Investor Prot. Corp.*,
  503 U.S. 258 (1992) ....................................................................18

*Independent Trust Corp. v. Stewart Information Services Corp.*,
  665 F.3d 930 (7th Cir. 2012) ..........................................................5

*Jay E. Hayden Foundation v. First Neighbor Bank, N.A.*,
  610 F.3d 382 (7th Cir. 2010) ....................................................12, 13

*Klosterman v. Western General Management*,
  32 F.3d 1119 (7th Cir. 1994) .........................................................30

*Langford v. Rite Aid of Alabama*,
  231 F.3d 1308 (11th Cir. 2000) .................................................17, 23

*Learning Works, Inc. v. The Learning Annex, Inc.*,
  830 F.2d 541 (4th Cir. 1987) .........................................................20

*Lister v. Stark*,
  890 F.2d 941 (7th Cir. 1989) .........................................................22

*Menkes v. Prudential Insurance Co. of America*,
  762 F.3d 285 (3d Cir. 2014)..........................................................21

*Merrimon v. Unum Life Insurance Co. of America*,
  758 F.3d 46 (1st Cir. 2014)...........................................................31

*NewPage Wis. System, Inc. v. United Steel, Paper & Forestry, Rubber, Mfg'g,
  Energy Allied Industrial & Serv. Workers International Union*,
  651 F.3d 775 (7th Cir. 2011) .........................................................34

*Northfield Insurance Co. v. City of Waukegan*,
  701 F.3d 1124 (7th Cir. 2012) .......................................................34

*Pactiv Corp. v. Sanchez*,
  2015 WL 4508667 (N.D. Ill. July 23, 2015) ...................................32

*Parkview Hospital, Inc., v. White's Residential & Family Services, Inc.*,
  2008 U.S. Dist. LEXIS 1289 (N.D. Ind. Jan. 7, 2008) .................21

*Parklane Hosiery Co., Inc. v. Shore*,
  439 U.S. 322 (1979)......................................................................6

*Peters v. Great Dane Trailers, Inc.*,
   1996 WL 698028 (N.D. Ind. Oct. 10, 1996)................................................................25

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust. v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) ......................................................................................10

*Pohl v. Nat'l Benefits Consultants, Inc.*,
   956 F.2d 126 (7th Cir. 1992) ......................................................................................22

*Rao v. BP Products N. America, Inc.*,
   589 F.3d 389 (7th Cir. 2009) ...............................................................................11, 19

*Ray v. City of Chicago*,
   629 F.3d 660 (7th Cir. 2011) ........................................................................................7

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993).....................................................................................................13

*Reynolds v. East Dyer Development Co.*,
   882 F.2d 1249 (7th Cir. 1989) ..............................................................................17, 22

*Sereboff v. Mid. Atlantic Medical Services*,
   547 U.S. 356 (2006).....................................................................................................32

*Shah v. KIK International LLC*,
   2007 U.S. Dist. LEXIS 47064 (N.D. Ind. June 26, 2007) ............................................1

*Slaney v. The International Amateur Athletic Federation*,
   244 F.3d 580 (7th Cir. 2001) .........................................................................10, 13, 16

*Stapleton v. Advocate Health Care Network & Subsidiaries*,
   76 F. Supp. 3d 796 (N.D. Ill. 2014) ...........................................................................30

*Studio Art Theatre of Evansville, Inc. v. City of Evansville*,
   76 F.3d 128 (7th Cir. 1996) ..........................................................................................6

*The Thomas D. Philipsborn Irrevocable Insurance Trust v. Avon Capital, LLC*,
   2013 WL 6068797 (N.D. Ill. Nov. 18, 2013) ..............................................................31

*Union Federal Bank v. Howard*,
   2005 WL 2031060 (N.D. Ind. 2005).............................................................................13

*United Food & Comm'l Workers Unions v. Walgreen Co.*,
   719 F.3d 849 (7th Cir. 2013) ............................................................8, 12, 13, 14, 15

*United States v. Turkette*,
   452 U.S. 576 (1981)............................................................................................11

*U.S. Airways, Inc. v. McCutchen*,
   133 S. Ct. 1537 (2013)................................................................................27, 28

*Volvo Trucks N. America V. Andy Mohr Truck Center*,
   2013 WL 2939052 (S.D. Ind. June 14, 2013)............................................34

*In re Wellpoint Out-of-Network UCR Rates Litigation*,
   865 F. Supp. 2d 1002 (C.D. Cal. 2011)......................................................15

*Williams v. Aztar Ind. Gaming Corp.*,
   351 F.3d 294 (7th Cir. 2003)........................................................................16

*Wooley v. Jackson Hewitt*,
   540 F. Supp. 2d 964 (N.D. Ill. 2008)..........................................................12

*Zahran v. Frankenmuth Mutual Insurance Co.*,
   1996 WL 182563 (N.D. Ill. Apr. 15, 1996)..................................................6

## STATE CASES

*Autoxchange.com, Inc. v. Dreyer & Reinbold, Inc.*,
   816 N.E.2d 40 (Ind. Ct. App. 2004)......................................................22, 23

*Bates Motor Transport Lines v. Mayer*,
   213 Ind. 664 (1938).......................................................................................24

*Fimbal v. DeClark*, 695 N.E.2d 125 (Ind. Ct. App. 1998)..........................22, 23

*Indianapolis-Marion Cty Public Library v. Charlier Clark & Linard, P.C.*,
   929 N.E.2d 722 (Ind. 2010)....................................................................25, 26

*Jeffrey v. The Methodist Hospitals*,
   956 N.E.2d 151 (Ind. Ct. App. 2011).........................................................26

*Kesling v. Hubler Nissan, Inc.*,
   997 N.E.2d 327 (Ind. 2014).........................................................................22

*McDonald v. Smart Professional Photo Copy Corp.*,
   664 N.E.2d 761 (Ind. Ct. App. 1996).........................................................24

*People v. Brigham*,
   261 A.D.2d 43, 48-51 (N.Y. 1999)........................................................19, 24

*State Employment Sec. Bd.v. Motor Exp.*,
    69 N.ED.2d 603 (Ind. Ct. App. 1946).........................................................................24

*Thomas v. Lewis Engineering*,
    848 N.E.2d 758 (Ind. Ct. App. 2006)........................................................................26

*Trail v. Boys & Girls Clubs of NW Ind.*,
    845 N.E.2d 130 (Ind. 2002) .........................................................................................24

*U.S. Bank v. Integrity Land Title Corp.*,
    929 N.E.2d 742 (Ind. 2010) ..................................................................................25, 26

## DOCKETED CASES

*Arapahoe Surgery Center, LLC v. Cigna Healthcare, Inc.*,
    No. 13-cv-3422 (D. Colo. 2013)..........................................................................5, 7, 9

*Conn. General Life Insurance Co. v. Advanced Surgery Center of Bethesda, LLC*
    *et al.*,
    No. 8:14-CV-2376 (D. Md. 2014) ..........................................................5, 7, 8, 19, 20

*Tri State Adv. Surgery Center, LLC et al. v. Health Choice, LLC et al.*,
    No. 3:14-cv-143 (E.D. Ark. 2014) ................................................................................5

## FEDERAL STATUTES AND RULES

18 U.S.C. §1341 ...............................................................................................................16

18 U.S.C. §1343 ...............................................................................................................16

18 U.S.C. § 1961(4) .........................................................................................................11

18 U.S.C. §1962(c) .......................................................................................10, 11, 18, 19

18 U.S.C. §1964(c) ..........................................................................................................18

29 U.S.C. § 1002(32) .......................................................................................................30

29 U.S.C. § 1003(b)(1) ....................................................................................................30

29 U.S.C. § 1132(a)(3).....................................................................................1, 7, 32, 33, 34

29 U.S.C. § 1144(a) .........................................................................................................20

Fed. R. Civ. P. 9(b) ...................................................................................................20, 22

Fed. R. Civ. P. 10(c) ....................................................................................................4, 10

**STATE STATUTES**

I.C. §35-32-2-4.............................................................................................................24

I.C. §35-43-5-4 *et seq.* ................................................................................................24

**MISCELLANEOUS**

Restatement (Second) of Torts § 552................................................................................26

## I.     INTRODUCTION

This is a straightforward billing dispute.  The defendant ambulatory surgical centers ("ASCs") are out-of-network medical care providers which Cigna says can charge "whatever they like" for their services.  However, Cigna does not want to allow patients who have health insurance through Cigna to pay the same deductibles and co-payments for those services as the patients would pay at one of Cigna's in-network providers.  Because the ASCs have attempted to match these in-network deductibles and co-payments, Cigna seeks to avoid paying *any amount* for services the ASCs provided to thousands of Cigna's insureds.  Cigna inflames this billing dispute by alleging RICO and ERISA claims that other courts previously dismissed.  Cigna's claims discussed herein likewise should be dismissed.[1]

## II.     FACTUAL ALLEGATIONS

Employee health and welfare benefit plans are categorized by their funding.  Generally, there are insured plans, for which an employer buys a health insurance policy that covers its employees; and there are self-funded plans, where the employer bears the risk of paying employees' medical claims itself.  For self-funded plans, employers usually hire a third-party administrator ("TPA") to perform claims processing and other administrative functions for the plan.  Most Cigna-administered plans are Administrative Services Only ("ASO") plans which are self-funded by the employer.  ECF No. 1 at ¶ 37.  Cigna, therefore, only serves as a claim administrator/TPA for these types of plans.  *Id.*  Cigna also offers plans which it fully insures and therefore is liable for employees' medical claims.  *Id.* at ¶ 39.  For fully-insured plans, Cigna is

---

[1] Defendants move to dismiss all of Cigna's claims except for Cigna's state law claim for tortious interference with contract (Count VI) and the portion of Cigna's ERISA claim seeking an injunction pursuant to ERISA §502(a)(3)(A), described at ECF No. 1 ¶224.  However, Defendants do not concede the merits of these claims.  Defendants' obligation to answer these claims is stayed until their motion to dismiss is resolved.  *Shah v. KIK Int'l LLC*, 2007 U.S. Dist. LEXIS 47064, *3 (N.D. Ind. June 26, 2007).

both administrator and insurer. *Id.* Cigna's Complaint makes general allegations that do not attempt to distinguish between these plans or Cigna's differing financial responsibility under each type of plan.

For both insured and ASO (self-insured) plans, Cigna divides medical care providers into "in-network" and "out-of-network" providers. *Id.* ¶¶ 49-53. An "in-network" provider has contractually agreed to accept payment for its services from Cigna at a contracted network rate. *Id.* ¶ 49. By contrast, an "out-of-network" provider "can charge whatever it likes for its services" because it does not have a contract with Cigna.[2] *Id.* ¶ 52. The plans then reimburse their members (patients) for certain healthcare costs incurred by them either in-network or out-of-network. *Id.* at ¶46. In addition, because a plan member can assign its right to this reimbursement directly to a provider, providers commonly bill Cigna directly, and are paid by Cigna directly, for the services rendered to its members. *Id.* at ¶43.

Regardless of what a provider charges, Cigna has rules regarding what it will reimburse. *Id.* ¶58 ("Cigna's plans do not automatically cover or reimburse a member for every 'charge' the provider submits to Cigna.") First, Cigna only reimburses certain "covered expenses," which Cigna determines according to how it interprets each plan. *Id.* ¶¶40, 46. In addition, if the member's claim relates to services from an out-of-network provider, Cigna reimburses based on a formula it created to determine Cigna's "Maximum Reimbursable Charge" (MRC): Cigna pays *the lesser* of either (1) the out-of-network provider's "normal charge for a similar service" or (2) an amount based on a Cigna calculation that considers either (a) what other providers

---

[2] In-network providers also submit claims for more money than Cigna will reimburse, as Cigna admits. ECF No. 1 ¶51. In other words, the in-network provider submits a claim to Cigna for "X." Cigna agrees to reimburse that provider, and the provider agrees to accept, a reimbursement of "Y." However, unlike out-of-network providers, who "may" choose to "balance bill" Cigna members for the difference between "X" and "Y" that Cigna does not pay, *id* ¶52, an in-network provider agrees not to bill members for the difference. *Id.* ¶51.

charge "in the region" or (b) what Medicare charges for such services "in the same geographic area." *Id.* ¶¶53, 62.  But whether a plan member obtains services in-network or out-of-network, Cigna contends the member must pay a deductible, co-insurance or copay to the provider. *Id.* ¶¶49, 54.  These charges are higher for out-of-network care than for in-network care.   *Id*.

Defendant SurgCenter partners with surgeons to create physician-owned and operated ASCs.  *Id.* ¶69.  These ASCs, eleven of which are defendants here, have no contracts with Cigna and so are out-of-network providers.   *Id.* ¶73.  When a plan member seeks care at one of the ASCs, the member signs a document like the "Non-Participating Provider Agreement" for "Out of Network Members" attached to Cigna's complaint.  *Id.* ¶79; ECF No. 1-18.  This agreement discloses to the patient that Cigna "will pay the surgery center as a non-participating provider" but that it is the ASC's "intention to honor their payment without additional cost to you than if we were a participating or 'in-network' provider."  ECF No. 1-18.   In other words, the ASC -- an out-of-network provider -- will charge for its services like an out-of-network provider: a charge that Cigna says can be "whatever [the ASC] likes."  ECF No. 1, ¶52.  However, the ASC intends to calculate the patient's deductible and copay as if in-network.  ECF No. 1-18.

When the ASCs submit member claims to Cigna for payment, the ASCs also disclose to Cigna that "[t]he insured's portion of this bill has been reduced in an amount so the patient's responsibility for the deductible and copay amount is billed at in network rates."  ECF No. 1.¶89.  While Cigna admits this language is on all paper forms submitted to it, Cigna contends "*on information and belief*" that the disclosure was not "routinely" on "electronic claims."  *Id*.  Even though Cigna received all those electronic claims and presumably now has them, Cigna does not attach a single complete set of electronic data for any claim to its complaint.  Instead, Cigna attaches one portion of the claim information electronically transmitted to Cigna regarding one

$40,800.32 claim (ECF No. 1-3), and does not disclose to the Court that SurgCenter's electronic transmittal of that claim data *also* included transmission of the following disclosure: "Insured's deductible and copay have been reduced and paid at in-network rate."[3] *See* **Exhibit 5** (attached).

Notwithstanding its admissions, Cigna now complains that the ASCs did not disclose to it their practice of charging in-network co-pays and deductibles to patients. *Id.* ¶¶63, 89. Cigna also complains that the ASCs did not disclose to Cigna their method of calculating service charges to Cigna or approximating the in-network deductibles and copays charged to members, without alleging any source of this "obligation." *Id.* ¶7. Cigna then calls these practices "fee forgiving" and "dual pricing" "schemes," on which it bases a variety of RICO, ERISA, federal declaratory judgment, and state common law claims. ECF No. 1. Because of these alleged "schemes," Cigna seeks to avoid *any* payment to the defendant ASCs for the services they

---

[3] SurgCenter submits electronic claims to Cigna in the form of data files. Each data file itself is the "electronic claim." In other words, the electronic claim is not contained in a "form" visually similar to a paper claims form, as Cigna's use of the word "form" might suggest. Rather, the electronic claim is simply a data file transmitted electronically to Cigna, which may then be accessed by Cigna and converted into a more user-friendly form using a software platform.

Exhibit 2 to Cigna's Complaint is a print out of only a *portion* of the data file transmitted by SurgCenter to Cigna for a $40,800.32 claim. Cigna has omitted portions of the data file actually transmitted to Cigna from Plaintiffs' Exhibit 2, including information that Cigna itself would need to adjudicate this "claim."

**Exhibit 5** to this motion contains the *full* data file actually transmitted to Cigna that comprises the "electronic claim" partially represented in Plaintiffs' Exhibit 2. By illustration, the diagnostic code identified on Plaintiffs' Exhibit 2 as "PRINC DIAG: 4730" and "OTHER DIAG: 4732" and "OTHER DIAG: 4718" appears on page 2 of Surgcenter's Exhibit 2 in its raw data form "HI*BK:4730" and "HI*BF:4732*BF:4718." The data contained within the field "TOTAL CHARGES: 40,800.32" on Cigna's Exhibit 2 is described in its electronic data form on SurgCenter's Exhibit 3: "CLM*000476*40800.32***," and so forth. As shown by SurgCenter's Exhibit 5, the "electronic claim" received by Cigna for the claim which Cigna partially describes in Exhibit 2 to the Complaint, contained a disclosure stating: "INSURED'S DEDUCTIBLE AND COPAY HAVE BEEN REDUCED AND PAID AT IN-NETWORK RATE".

SurgCenter may provide the Court with the complete data file transmitted to Cigna that makes up this "electronic claim" because the partial claim information in Plaintiffs' Exhibit 2 is deemed part of the Complaint pursuant to Fed. R. Civ. P. 10(c). Documents that are referred to in Cigna's Complaint or central to its claim may be attached to a motion to dismiss. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (purpose of this rule is "to prevent parties from surviving a motion to dismiss by artful pleading or failing to attach relevant documents.").

provided to Cigna's plan members.  *Id.* ¶¶ 44, 60, 64.

### III.    STANDARD OF REVIEW

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934-35 (7th Cir. 2012) (citation and internal quotation omitted). "The complaint 'must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Id.* at 935 (citation omitted). A plaintiff's well-pleaded factual allegations must be accepted as true, but not his legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### IV.    ARGUMENT

#### A.    Cigna Is Estopped From Asserting ERISA Restitution And RICO Claims

Before this lawsuit, Cigna filed virtually identical RICO and ERISA claims against SurgCenter and its related ASCs in three other district courts.[4]  District courts in Colorado and Maryland ruled that Cigna's cookie cutter complaints do not state a claim for relief under ERISA §502(a) for restitution.   Both courts also dismissed Cigna's RICO claims, with the Colorado

---

[4] This Court may "go beyond the judgment roll, and may examine the pleadings and the evidence in the prior action" in order to analyze which issues are collaterally estopped.  *See Feltman v. Blatt, Hasenmiller, Leibsker & Moore, LLC*,  2006 WL 2375379, at *3 n.3 (N.D. Ill. Aug. 16, 2006) (citing *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 395 (7th Cir. 1986)).  Defendants therefore attach Cigna's Colorado claims as **Exhibit 1**, Maryland claims as **Exhibit 2**, and the Colorado and Maryland district court decisions regarding those claims as **Exhibit 3** and **Exhibit 4**, respectively. Additional briefing on the Defendants' motions to dismiss in those cases may be found at the "Colorado Case," *Arapahoe Surgery Center, LLC v.  Cigna Healthcare, Inc.*, No. 13-cv-3422 (D. Colo. 2013) at ECF Nos. 43, 45, and 47  and in the "Maryland Case," *Conn. Gen. Life Ins. Co. v. Advanced Surgery Center of Bethesda, LLC* et a., No. 8:14-CV-2376 (D. Md. 2014) at ECF Nos. 41-1, 44, and 51.  A motion to dismiss remains pending on Cigna's Arkansas claims, which may be found at ECF No. 49 in  *Tri State Adv. Surgery Center, LLC et al. v. Health Choice, LLC et al.,* No. 3:14-cv-143 (E.D. Ark. 2014).

court also denying Cigna leave to amend.   Because of those courts' decisions, Cigna is collaterally estopped from pursuing similarly pleaded ERISA restitution and RICO claims here.

Collateral estoppel, or issue preclusion, "generally prevents a party from relitigating an issue the party has already litigated and lost."  *Gilldorn*, 804 F.2d at 392; *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n. 4 (1979) (defensive non-mutual collateral estoppel "occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant").  Collateral estoppel:

> preclude[s] relitigation of issues in a subsequent proceeding when: (1) the party against whom the doctrine asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical.

*Gilldorn*, 804 F.2d at 392 (citation omitted); *Zahran v. Frankenmuth Mut. Ins. Co*., 1996 WL 182563, at *5 (N.D. Ill. Apr. 15, 1996).  An interlocutory order can be sufficiently "final" on a legal issue or fact to preclude further litigation. *Gilldorn*, 804 F.2d at 394 (interlocutory order can be "final" for collateral estoppel because "[t]he ultimate question is whether the 'prior adjudication . . .is determined to be sufficiently firm to be accorded conclusive effect.'") (citation omitted); *Asllani v. Bd. Of Educ. of the City of Chi*., 845 F. Supp. 1209, 1215-16 (N.D. Ill. 1983) (interlocutory decision in one pending case precluded same issue in another pending case).  The criteria for collateral estoppel of Cigna's ERISA restitution and civil RICO claims are met here.

1.     *Same Plaintiff*

Cigna (and its affiliates) are the Plaintiffs/Counterclaim Plaintiffs in the Colorado and Maryland cases, and the Plaintiffs here.  *See* **Exh. 1**; **Exh. 2**; ECF No. 1.   Thus, the "same plaintiff" requirement is met. *Studio Art Theatre of Evansville, Inc. v. City of Evansville*, 76 F.3d 128, 131 (7th Cir. 1996) (collateral estoppel applies against parties and their privies, which have

a "common interest" and "'sufficiently represent' each other's interests") (citation omitted).

2.     *ERISA Restitution Claim*

Cigna is estopped from asserting an ERISA §502(a) claim for equitable restitution because the Colorado and Maryland district courts held that (1) Cigna's claim does not "specifically identify" funds distinct from Defendants' general assets, and (2) the "overpayment recovery provisions" in Cigna's plans do not create an "equitable lien by agreement," contrary to Cigna's allegations in those cases, which are repeated here in ECF No. 1 at ¶¶ 41-42, 213-225.

Both the Colorado and Maryland courts held that Cigna's claims did not "specifically identify" funds distinct from defendants' general assets. **Exh. 3** at 6-8; Exh. 4 at 15-21. Cigna's claim here is substantively identical to its previous claims in all relevant respects, but includes one new allegation: a *legal* argument regarding how the "overpayment recovery provisions in these plans specifically identify a particular fund." ECF No. 1 at ¶¶42, 220; **Exh. 1** at Count VII and **Exh. 2** at Count I. Including this legal argument in its Complaint does not change the estoppel analysis because Cigna already "actually litigated" that issue in opposing defendants' prior motions to dismiss. *See Colorado Case*, at ECF No. 45 at 9-10 ("Cigna seeks the restitution of specifically identifiable funds that were paid to each of the six ASCs--the exact amounts that Cigna overpaid to the ASCs."); *Maryland Case* at ECF No. 44 at 17. The district courts expressly considered and rejected this argument in dismissing Cigna's ERISA restitution claims. **Exh. 3** at 7-8; **Exh. 4** at 21-22. Cigna's (twice) rejected legal argument is not now a "factual allegation" in *this* case simply because Cigna asserts it as one, and it need not be accepted as true. *Ray v. City of Chi.*, 629 F.3d 660, 662 (7th Cir. 2011) ("We 'need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'") (citation omitted).

7

The Maryland district court also rejected Cigna's "equitable lien" argument. In opposition to a motion to dismiss, Cigna argued that its plan language created an equitable lien. *See Maryland Case* at ECF No. 44, at 17-19. The plan language Cigna quoted in the Maryland Case, *id.* at 18, is identical to the plan language quoted in ¶41 of Cigna's Complaint here. The Maryland court held that this plan language did *not* create an equitable lien and therefore, dismissed Cigna's restitution claim. **Exh. 4** at 22-26. The court also reached this holding based on other plan language which is also contained within the exemplar plan Cigna appends to its Complaint here. *Compare id*. with ECF No. 1-2 at 41-42.

3.    *RICO Claim*

Cigna also is estopped from asserting a RICO claim because (1) the Maryland court held that Cigna's identical allegations did not plead an "enterprise" and (2) the Colorado court held that Cigna's admission that there was no misrepresentation foreclosed its RICO claims.

Cigna's RICO allegations regarding "enterprise" here mirror those in the Maryland Complaint.[5] After extensive briefing by the parties, the Maryland court held that Cigna's RICO allegations "fail to show that the alleged 'enterprises' had any affairs that were separate from those of their affiliate member businesses." **Exh. 4** at 37. Because the "complaint fails to allege the existence of a separate, distinct enterprise, or that each ASC and SurgCenter were conducting the affairs of such an enterprise rather than their own affairs," that court dismissed Cigna's RICO claims. *Id*. at 40. Significantly, that court relied on the Seventh Circuit's analysis in *United Food & Comm'l Workers Unions v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013). **Exh. 4** at 33-

---

[5] For example, the Complaint ¶¶67-91, 97-112, and 114-117, in which Cigna describes the alleged RICO enterprise and schemes, are nearly a verbatim copy of the Maryland Complaint, **Exhibit 2** at ¶¶70-94 and 140-156, and 158-159. The only textual additions made by Cigna here are not related to identifying an "enterprise." Instead, these additional allegations attempt to bolster Cigna's allegations about supposed misrepresentations to patients regarding their responsibility for in-network charges. *E.g., compare* ECF No. 1 at ¶¶86, 90, 97, 104, and 116 with **Exhibit 2** at ¶¶89, 93, 140 and 147.

40.   The Maryland court's decision, applying *this* circuit's law to dismiss Cigna's claim for failure to plead "enterprise," estops Cigna from pursuing the same claim using the same "enterprise" allegations here.

Cigna is also estopped from asserting RICO claims by its own admissions.   The Colorado district court held that Cigna admitted the defendants' claims forms disclosed that patients' responsibility was calculated based on in-network rates, **Exh. 4** at 11, based on a disclosure contained in **Exh. 1** ¶77, which is repeated at ¶89 of Cigna's Complaint here.   Specifically, the Colorado court held:

> In admitting that the ASCs disclosed that they reduced that patient's portion of the bill and made the patient responsible for only an in-network deductible and co-pay amount, Cigna concedes that it was provided information from which it should have known that the ASCs were reducing the amount billed to patients and that they were attempting to approximate in-network rates. Given this disclosure, which appeared in the ASCs' claim forms, the Court finds it implausible that Cigna was misled into believing that the patient was charged the same amount that the ASCs billed to Cigna, because Cigna was aware that the ASCs' claims were higher than in-network rates.

*Id*. at 11-12.   The Court then dismissed the RICO claim for failure to plead mail or wire fraud, without leave to refile Cigna's complaint.   *Id.* The court's findings estop Cigna from pleading mail fraud or wire fraud in this case. *See Asllani*, 845 F. Supp. at 1215-16 (collateral estoppel bars relitigation of fact found by prior judge in interlocutory order).

Cigna cannot avoid the application of the Colorado court's factual determination by adding more bald assertions that it "wasn't told" about defendants' billing practice.   *See, e.g.,* ECF No. 1 at ¶75.   The parties already "actually litigated" the issue of Cigna's knowledge on defendants' motion to dismiss in the Colorado case.   *See Colorado Case* at ECF No. 43 at 3-8, ECF No. 45 at 5 (Cigna asserts defendants' billing practices were "unknown to Cigna") and at ECF No. 47 at 5-6.   Cigna's additional allegations to the contrary in this Complaint (e.g. ¶75)

are contradicted by Cigna's *admission* of knowledge in ¶89, the effect of which was already

litigated in Colorado and decided against Cigna by that district court.

Cigna attempts to avoid estoppel by adding an allegation here that defendants' electronic

claims forms did not contain disclosures, even if their paper forms admittedly *did* contain such

disclosures. ECF No. 1 ¶89.  This new allegation has no effect on the estoppel analysis.  First,

Cigna pleads this allegation "on information and belief." *Id*.  This speculative allegation is

legally deficient because the electronic claims forms were sent to Cigna, as Cigna admits at ECF

1 at ¶¶106-107.  *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust. v. Walgreen Co*.,

631 F.3d 436, 443 (7th Cir. 2011) (fraud may not be pled "on information and belief" where

facts constituting the fraud are "accessible to the plaintiff").  Second, Cigna knew this allegation

was false when Cigna filed its compliant because the claims *in Cigna's possession* actually

contained the same disclosure as the written forms.  *See* **Exh. 5** (the electronic claims Cigna

partially produces at ECF 1-3).  As discussed, the court may consider the complete claims data

related to Exhibit 2 to Cigna's complaint when ruling on this motion to dismiss.  *See* Fed. R. Civ.

P. 10(c); *Burke v. 401 Wabash Venture LLC*, 714 F.3d 501, 505 (7th Cir. 2013).

In sum, the sufficiency of Cigna's ERISA restitution and RICO claims were already

"actually litigated" and decided "on the merits" in Colorado and Maryland for purposes of

collateral estoppel.  Cigna is estopped from reasserting ERISA restitution or RICO claims based

on a substantively identical complaint in this case.  These claims should be dismissed.

### B.    Cigna Fails To Plead Civil RICO Claims

Plaintiffs have attempted to plead eleven identical RICO 18 U.S.C. §1962(c) claims.

ECF No. 1 at Counts I.A-I.K. "[T]o state a viable cause of action under §1962(c), a plaintiff must

allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Slaney*

*v. The Int'l Amateur Athletic Fed.,*, 244 F.3d. 580, 597 (7th Cir. 2001) (citation omitted). Plaintiffs' RICO claims fail because they fail to plead: (1) an "enterprise" that is distinct from either the defendants or the alleged racketeering activity; (2) that each defendant conducted the enterprise's affairs rather than their own affairs; (3) a pattern of mail and wire fraud; and (4) injury "by reason of" the §1962 violations.  Plaintiffs' RICO claims should be dismissed.

> 1.      *Failure to Properly Allege a Criminal Enterprise.*

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4).  Plaintiffs attempt to plead "eleven separate two-party association in fact enterprises," each consisting of SurgCenter and one ASC.  ECF No 1 ¶97.  However, plaintiffs fail to plead any enterprise.

Case law defines an enterprise by what it is, and what it is not.  An enterprise must be distinct from the defendant "person" who conducts or participates in conducting the enterprise. *Cedric Kushner Prom. Ltd. v. King*, 533 U.S. 158, 161 (2001); *Crichton v. Golden Rule Ins. Co*., 576 F.3d 392, 399 (7th Cir. 2009); *Crissen v. Gupta*, 994 F. Supp.2d 937, 947-48 (S.D. Ind. 2014). An enterprise also is "*not* the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *Rao v. BP Products N. America, Inc.*, 589 F.3d 389, 399 (7th Cir. 2009) (§1962(c) "requires that there be a 'pattern' of racketeering activity, which is an element distinct from the enterprise requirement.").  It is not simply a conspiracy, either.  *Bachman v. Bear Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999); *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir. 1997).   Even an association-in-fact enterprise, the least defined type of enterprise, has a "structure" that includes at least "a purpose, relationships among those associated with the

enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."

*Boyle v. United States*, 556 U.S. 938, 946 (2009).   As this court recently explained, "purpose"

> must entail some form of collaborative, coordinated effort to accomplish
> a truly common end that could not be as effectively pursued individually.
> In this regard, it might be helpful to say that the enterprise must not only
> *have* a purpose, but must also *serve* a purpose.

*Browning v. Flexsteel Industries, Inc.,* 955 F. Supp.2d 900, 912 (N.D. Ind. 2013) (DeGuilio, J.);

*See also Crisson,* 994 F. Supp.2d at 946-48 ("Even if Banco Popular used fraudulent means to

carry out [its own] activities, those activities constituted Banco Popular's own business affairs

and were not, as alleged, a separate enterprise."); *Wooley v. Jackson Hewitt*, 540 F. Supp.2d 964,

973-74 (N.D. Ill. 2008) (a franchisor and its franchisees are not an "enterprise").

Cigna fails to plead an "enterprise" that is distinct from the defendants or distinct from

the alleged pattern of racketeering activity.  Cigna alleges that the "purpose" of the enterprise is

to "operate for-profit medical centers," and blames those medical centers for sending out

misleading claims forms to Cigna.    ECF No. 1 ¶¶97, 106-07.   In other words, each ASC

defendant is also an alleged RICO "enterprise," which operated itself in a fraudulent manner. *See*

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 389 (7th Cir. 2010) (no RICO

enterprise because the "defendants did not use the conspiracy (the enterprise); they were the

conspiracy").  In fact, Cigna does not attribute *any* predicate acts to defendant SurgCenter. ECF

No. 1 at ¶97, 106-07.  Cigna instead alleges that SurgCenter had a business relationship with

each ASC, providing it with forms, management support, and financial backing. *Id.* ¶¶66-72; *See*

*Walgreen*, 719 F.3d at 855 (commercial relationship is not a RICO "enterprise").

Cigna's allegations impermissibly equate the "enterprise" with the defendants, and also

with the alleged "racketeering activity" in which the defendant ASCs have allegedly engaged.

*See Crissen*, 994 F. Supp. at 946-48; *Gondel v. PMIG 1020 LLC*, 2009 WL 248681, at *4 (D.

Md. Jan. 22, 2009) ("By naming [the three corporations] as defendants, and alleging only that these corporate defendants – through themselves and their agents – engaged in racketeering activity, plaintiffs make precisely the type of RICO allegation that fails to differentiate between 'person' and 'enterprise.'").  Cigna also fails to allege any "purpose" of the enterprise that is separate and distinct from the business purposes of the defendants (the operation of for-profit medical centers), or that could not be accomplished by the ASCs on their own.  *Browning*, 955 F. Supp.2d at 912; *see also Walgreen*, 719 F.3d at 855-56. The RICO claims should be dismissed.

2.     *Failure to Properly Allege Conduct of the Enterprise's Affairs.*

Cigna also fails to plead that each defendant conducted or participated in the conduct of the *enterprise's* affairs, and not just their *own* affairs, as the Maryland district court has already held against Cigna.  **Exh. 4**. at 29-40; *Jay E. Hayden Found.*, 610 F.3d at 389 ("the RICO offense is *using* an enterprise to engage in a pattern of racketeering activity.").

In addition to requiring the RICO "person" to be distinct from the RICO "enterprise," "that 'person' must have 'conducted or participated in the '*enterprise's* affairs' not just its own affairs.'" *Walgreens*, 719 F.3d at 854 (alteration omitted); *see also Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *Baker v. IBP, Inc*., 357 F.3d 685, 691 (7th Cir. 2004).   "[S]imply performing services for the enterprise, even with knowledge of the enterprise's illicit nature, is not enough to submit an individual to RICO liability under § 1962(c)." *Slaney*, 244 F.3d at 598 ("Simple control over one aspect of an enterprise's activities does not evince control over the enterprise itself."); *Union Fed. Bank v. Howard*, 2005 WL 2031060, at * 5 (N.D. Ind. 2005) ("Plaintiff fails to explain how Sterling's role in the alleged enterprise was separate from its regular appraisal business, as one would reasonably assume that Sterling set and collected the fees for all appraisals, not just the appraisals associated with the alleged scheme."); *accord*

13

*Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 729-30 (7th Cir. 1998) (failure to plead RICO enterprise against family who owned allegedly bad company and was familiar with its policies, but against whom no RICO predicate acts were alleged).

In *Walgreens*, plaintiffs alleged that Walgreens and Par, a drug manufacturer, were conducting a RICO enterprise with the mutual goal of increasing their respective profits by filling prescriptions in dosage forms (pill or tablet) that were more expensive than the prescribed form. 719 F.3d at 850-51.  Walgreen's practice began after Par advocated the income advantages of using the more expensive drug forms to Walgreens.  *Id.* at 851-52.  The Seventh Circuit held that defendants were not "conducting" an "enterprise" through this activity.  *Id.* at 853.  While Par "proposed the drug-switching program and Walgreens agreed to implement it," plaintiffs failed to plead how these actions "were undertaken on behalf of the *enterprise* as opposed to on behalf of Walgreens and Par in their individual capacities, to advance their individual self-interests." *Id.* at 854.  The court held that the commercial relationship between the parties did not mean they had "joined together to create a distinct entity" and that even if their activities were "by all appearances illegal,' the companies basically were alleged to be conducting *themselves*  -- and not a distinct "enterprise" -- illegally.  *Id.* at 855. Finally, the court rejected plaintiffs' argument that neither defendant could accomplish the same goals without the other, noting that it was "far from obvious" that Walgreens could not have done so on its own, and that the type of illicit "cooperation" alleged by the plaintiffs "described virtually every prescription pharmaceutical distribution chain." *Id.* at 856.

*Walgreens* is dispositive here, as the Maryland court found. **Exh. 4** at 29-40.  Cigna essentially alleges that the franchisee-franchisor model, or any similar business model by which one company invests in and provides business support to other companies of a particular type, is

a *per se* RICO enterprise.  Not only is this not the law, *cf. Walgreens*, 739 F.3d 849, but Cigna

fails to allege how either SurgCenter or each ASC engaged in conducting the affairs of a separate

and distinct "enterprise," rather than simply their *own* affairs.  Cigna complains that SurgCenter

provided management consulting and financial backing support to the ASCs.  ECF No. 1 ¶¶68-

70, 97.  As would any business if it wants to stay afloat, each of the ASCs tried to obtain patients

(which Cigna calls "luring" patients), treat those patients, and submit insurance claims forms for

services rendered.  *Id.* ¶97. Because SurgCenter had a 35% ownership interest in the ASCs,

Surgcenter got some measure of the profits made by each ASC in the course of treating patients.

*Id.*  ¶101.  Even if the claims submitted by ASC were somehow improper, "[t]hese allegations

fail to show that the alleged 'enterprises' had any affairs that were separate from those of their

affiliate members' businesses." **Exh. 4** at 37.  Cigna's RICO claims should be dismissed.

### 3.    *Failure to Plead a Pattern of Racketeering Activity*

Cigna also fails to plead a pattern of racketeering activity.  First, Cigna fails to plead that

SurgCenter engaged in any predicate acts.  Second, Cigna fails to plead that the ASCs engaged in

either mail fraud or wire fraud because (a) Cigna admits that the ASCs disclosed their billing

practices, and (b) the ASCs had no duty to disclose their differential pricing structure for

calculating copays and deductibles.

### a.    Failure to Plead Pattern

Cigna fails to plead that SurgCenter, itself, engaged in any predicate acts.  Instead, the

only predicate acts alleged by Cigna, were committed by the defendant ASCs.  ECF No. 1 at ¶¶

106-07.  However, "[w]here RICO is asserted against multiple defendants a plaintiff must allege

at least two predicate acts by *each* defendant." *In re Wellpoint Out-of-Network UCR Rates Litig.*,

865 F. Supp.2d 1002, 1035 (C.D. Cal. 2011); *Defalco v. Bernas*, 244 F.3d 286, 322 n.22  (2d Cir.

2001) ("[T]he requirements of section 1962(c) must be established as to each defendant."). Because Cigna fails to plead predicate acts by SurgCenter, its RICO claims fail.

> b.      Failure to Plead Either Mail Fraud or Wire Fraud

"[A]llegations of fraud in a civil RICO complaint are subject to a heightened pleading standard of Fed R. Civ. P. 9(b), which requires a plaintiff to plead all averments of fraud with particularity." *Slaney*, 244 F.3d at 597 (citing *Goren*, 156 F.3d at 726).   Under 18 U.S.C. §1341, "[t]he elements of mail fraud are (1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme." *Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 298-99 (7th Cir. 2003).   The elements of wire fraud under 18 U.S.C. §1343 "are the same, except that it requires use of interstate wires rather than mail in furtherance of the scheme." *Bible v. United Student Aid Funds, Inc.*, 2015 WL 4911412, *20 (7th Cir. Aug. 18, 2015).   Importantly, "the making of a false statement or material misrepresentation, or the concealment of a material fact" is "necessary to" pleading mail or wire fraud.  *Williams*, 351 F.3d at 299.

Neither of the misrepresentations alleged by Cigna constitute mail or wire fraud because they were either disclosed, or the ASCs had no duty to disclose them.   First, Cigna alleges that the ASCs did not disclose that they were charging patients estimated in-network deductibles and copays, rather than out-of-network deductibles and copays.   ECF No. 1 ¶¶64 ("promising Cigna plan members that in-network benefits would apply."), 75, 79, 82, 86, 92.  Cigna calls this a "fee forgiving" scheme." *Id.* ¶1.  However, Cigna *admits* that the ASCs' paper claims forms expressly disclosed that the insured's "portion of this bill has been reduced in amount so the patient's responsibility for the deductible and copay amount is billed at in-network rates." *Id.* ¶89.  The electronic claims data sent to Cigna *also* expressly advised Cigna of this billing practice.  **Exh. 5**.

16

The Colorado district court previously held that Cigna "failed to plausibly plead that the ASCs misrepresented their billing practices" because of such disclosures.[6]  **Exh. 3** at 11.  This Court should also dismiss Cigna's RICO claims because the ASCs' claims forms expressly disclose the very thing of which Cigna complains.

Cigna's other "fraud" allegation is that the ASCs did not disclose the way they calculated in-network deductibles and copays charged to patients, on the one hand, and the overall out-of-network price of services charged for the services provided when submitting claims forms to Cigna, on the other.  ECF No. 1 at ¶¶ 7, 63.  Cigna fails to allege the source of this so-called "obligation," let alone that this type of information is typically included in a claims form (the allegedly fraudulent instrument) or disclosed in any other document.  *See Reynolds v. East Dyer Dev. Co.*, 882 F.2d 1249, 1252 (7th Cir. 1989) (holding that failure to disclose, "absent something more," is not a viable basis for wire or mail fraud and rejecting plaintiffs' RICO claim); *Langford v. Rite Aid of Alabama*, 231 F.3d 1308, 1314 (11th Cir. 2000) ("Differential pricing alone is not a fraudulent practice, plaintiffs must assert some particular reason why the relationship in this case was such that non-disclosure of the differential pricing structure constitutes a violation of the mail and wire fraud statutes.").  Because Cigna fails to plead *any* basis for this alleged "obligation," let alone a plausible one, Cigna has failed to plead predicate acts of mail or wire fraud.  *See Reynolds*, 882 F.2d at 1252 (to hold otherwise "would put federal judges in the business of creating what in effect would be common law crimes, i.e. crimes not defined by statute") (citation omitted).

---

[6] The Court also noted that Cigna did not allege RICO claims based on these misrepresentations (the only alleged predicate acts were the claims forms submitted to Cigna, as here).  **Exh. 3** at 11 (citing **Exh. 2** at ¶¶208 and 289, which are repeated as Complaint ¶104 here).  Nor can Cigna plausibly allege such a theory, since the forms for "Out of Network" patients signed by them, also expressly disclosed this practice.  ECF No. 1-18.

Cigna grasps at straws, claiming that it was misled because the words "this bill" allegedly suggested that the amount reflected on the claims form was the same amount the patient was billed. ECF No. 1 ¶90.  In the context of the other language of the disclosure – "[t]he insured's portion of *this bill* has been reduced in an amount so the patient's responsibility for the deductible and copay amount is billed at in network rates" -- Cigna's assertion is implausible. Cigna could readily see that the amounts submitted on the claims forms were not the contract rates that Cigna has agreed to pay its network providers and thus could not have been the amount used to calculate the patients' contribution.  Cigna's attempts to deny awareness of the ASCs' practice of reducing the patients' obligation to in-network levels is implausible, and contrary to its own admissions.  *Id*. at ¶ 89; Exh. 5.  Cigna's RICO claims should be dismissed.

4.       *Failure to Plead Injury "By Reason of" A §1962 Violation*

A civil RICO plaintiff must be "injured in his business or property by reason of a violation of section 1962."  18 U.S.C. §1964(c).  The "by reason of" language requires a plaintiff to "show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'"  *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). "Proximate cause for RICO purposes . . . requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Id*; *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658-59 (2008); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460 (2006) (predicate act must "[lead] directly to the plaintiff's injuries.").  "A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient." *Hemi Group*, 559 U.S. at 13.  Proximate cause requires more than just reasonable "foreseeability." *Byrne v. Nezhat,* 261 F.3d 1075, 1110 (11th Cir. 2001).  Therefore, "the compensable injury flowing from a [RICO] violation . . . 'necessarily is the harm caused by [the]

18

predicate acts" sufficiently related to constitute a pattern.  *Hemi Group*, 559 U.S. at 13 (quoting *Anza*, 547 U.S. at 457); *Rao*, 589 F.3d at 399.

Cigna fails to plead an injury "by reason of" an alleged §1962 violation because Cigna does not allege that it actually *paid* the amount billed on the ASCs' claims forms.   To the contrary, Cigna admits that both in-network and out-of-network providers (like the ASCs) can bill "whatever they like" for the services they provide to Cigna members.  *See supra* pg. 2 and n. 2.  But "Cigna's plans do not automatically cover or reimburse a member for every 'charge' the provider submits to Cigna."   ECF No. 1 ¶58.  Instead, Cigna only reimburses certain "covered expenses."  *Id.* ¶¶ 40, 46.  In addition, Cigna reimburses out-of-network providers "an amount" based on a formula it created to determine the "Maximum Reimbursable Charge."  *Id.* ¶¶ 53, 62. Under this formula, Cigna may pay for services based on Medicare rates or the charges of other service providers if Cigna's reimbursement calculation shows those prices to be less expensive than the price billed by the out-of-network provider.[7]  *Id.*  Thus, Cigna has failed to plead that the ASC's service charge calculations were either the "but for" or the "proximate" cause of its alleged injury.  *See People v. Brigham*, 261 A.D.2d 43, 48-51 (N.Y. 1999).

Cigna perfunctorily tries to bridge this gap with a vague assertion that:

> [f]or a variety of reasons, the billed amount is relevant and material to the determination of the 'allowed amount,' which is the amount that Cigna determines to be covered by its plans, and which forms the basis for determining Cigna's reimbursement payment and the plan member's cost-share responsibility.

ECF No. 1, ¶49.  Cigna elsewhere defines the "allowed amount" as the "*part of* the provider's

---

[7] In the *Maryland Case*, Cigna appended claims charts to its Complaint that are identical to those attached to its complaint here, except that they included an additional column showing what Cigna actually *paid* on those claims.  See *Maryland Case* at ECF No. 1-6.  After defendant noted that Cigna paid *less* for every claim than the amount billed by the ASCs, Maryland Case at ECF No 41-1 at 22, Cigna omitted the "amount paid" column from the same charts it appended to this Complaint.  *See* ECF No. 1-4 to 1-14.

billed charges . . . *considered* for coverage by the plan." Id. ¶46 (emphasis added). Yet this does

nothing to explain how Cigna's alleged injury is directly and proximately related to a bill when

Cigna admits in *this* case that it can and does pay based on formulas that look to third parties'

costs, instead of the ASC's charges, and when Cigna has admitted in *other* cases that it does not

pay the amount billed on the allegedly "inflated" claims to begin with. *Id.* at ¶¶53, 46; *Maryland*

*Case* at ECF No. 1-6; *See* Fed. R. Civ. P. 9(b); *Learning Works, Inc. v. The Learning Annex,*

*Inc.*, 830 F.2d 541, 546 (4th Cir. 1987) ("Reasonable, detrimental reliance upon a

misrepresentation is an essential element of a cause of action for fraud . . . and such reliance

must be pleaded with particularity."). Because the costs Cigna pays need not bear a relationship

to costs billed by the ASCs, Cigna's RICO claims should be dismissed.

      **C.**    **Cigna's State Law Claims Should Be Dismissed.**

          1.   *Cigna's State Law Claims Are Preempted By ERISA*

Insofar as Cigna asserted claims arising from plans governed by ERISA, all state law

claims related to those plans are preempted. *See* 29 U.S.C. §1144(a) (ERISA shall supersede any

and all state laws "as they may now or hereafter relate to any employee benefit plan"). ERISA's

"expansive" pre-emption provisions ensure that "employee benefit plan regulation would be

exclusively a federal concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); *Central*

*States, Southeast & Southwest Areas Health & Welfare Fund v. Neurobehavioral Assoc., P.A.*,

53 F.3d 172, 174 (7th Cir. 1995) (ERISA preemption "extends to any state cause of action that

has a 'connection or reference to' an ERISA plan").

State law claims for fraud, misrepresentation, and consumer fraud generally are

preempted under ERISA. *See Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294-5 (3d

Cir. 2014). This is so because resolving such allegations "would require a court to assess the

defendants' representations in light of the plaintiffs' benefits and rights under the plans." *Id.* at

295.  When courts have allowed claims for fraud and misrepresentation to proceed, those claims

have arisen when a medical provider who contacted a plan administrator prior to providing

services was told that the services were covered.  *See Advanced Ambulatory Surgical Center v.

Cigna Healthcare of Ill.*, 2014 WL 4914299, at *1 (N.D. Ill. Sept. 30, 2014).  Thus, the claims

arise out of alleged oral representations, rather than the plan language.  *Id.* at * 3.

Here, Cigna's state law claims all require an analysis of plan documents to determine

what payments were allowed under the plans and whether the statements being made or actions

taken by the ASCs were contrary to the plan documents.   Cigna's allegations require the

interpretation of the operative plans, determining eligibility of claims pursuant to those plans,

calculating plan benefits under those plans, and reviewing claims submitted pursuant to those

plans.  Unlike *Ambulatory Surgical Center*, the fraud and misrepresentation claims here do not

involve oral representations.   Rather, Cigna's claims are based on claims for payment made in

claims submission forms. Clearly, whether it is proper to pay claims pursuant to those forms

requires reviewing and interpreting plan related documents.  Thus, the plans are implicated in all

the asserted state law claims.  *See e.g., Parkview Hospital, Inc., v. White's Residential & Family

Services, Inc.*, 2008 U.S. Dist. LEXIS 1289, *14 (N.D. Ind. Jan. 7, 2008) (state law fraud and

contract claims preempted where "[t]he ultimate question … is whether [the provider] is entitled

to payment from the Plan for services rendered to the [plan beneficiaries]. The existence of

coverage under the Plan is a prerequisite to that entitlement and it is this question that each of the

state law claims seek to have resolved."); *Hankinson v. Northwestern Mutual Life Ins. Co.* , 2012

WL 5286922 at * 6-10 (N.D. Ill. Oct. 24, 2012) (negligent misrepresentation claims preempted

because claims could not be addressed without considering policy language).  Because there is

clearly a connection or reference to the plan in each of the state law claims, the state law claims, as they relate to the plans governed by ERISA, should be dismissed because they are preempted by ERISA.[8] *Collins v. Ralston Purina Co.*, 147 F.3d 592, 595 (7th Cir. 1998) (ERISA "preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan.").

Cigna's state law claims also fail individually, independent of the pre-emption analysis.

> ### 2. *Cigna Fails to Plead Fraud.*

To plead common law fraud in Indiana, Cigna must plead:

> (1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of.

*Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 335 (Ind. 2014) (quotation omitted). Each of these elements must be pleaded with specificity under Fed R. Civ. P. 9(b).   In addition, while failure to disclose facts can constitute actionable fraud under certain circumstances, *id.*, "in the absence of a duty, mere silence is not actionable fraud." *Autoxchange.com, Inc. v. Dreyer & Reinbold, Inc.*, 816 N.E.2d 40, 51 (Ind. Ct. App. 2004); *Fimbal v. DeClark*, 695 N.E.2d 125, 127 (Ind. Ct. App. 1998) (duty to disclose only "by one on whom the law imposes a duty to disclose")(citation omitted); *accord Reynolds*, 882 F.2d at 1252.

First, Cigna vaguely alleges that each ASC failed to "disclose material information regarding the manner, extent, and nature by which the ASC waived Cigna members' required out-of-network co-payments, deductibles, and co-insurance, and other patient cost-sharing

---

[8] It is not relevant that Cigna may be left without a remedy for the ERISA-regulated plans.  "[T]he availability of a federal remedy is not a prerequisite for federal preemption."  *Lister v. Stark*, 890 F.2d 941, 946 (7th Cir. 1989); *Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 128 (7th Cir. 1992) (lack of remedy under ERISA does not preclude preemption of state law claim).

responsibility. . . ."  This allegation, which fails to identify the "material information" that allegedly was falsely stated, does not satisfy the heightened pleading requirements of Rule 9(b). Cigna's allegation also clearly is not true, as Cigna elsewhere admits.  Specifically, Cigna admits that the ASCs' claims forms expressly disclosed that "[t]he insured's portion of this bill has been reduced in an amount so the patient's responsibility for the deductible and copay amount is billed at in network rates."  ECF No. 1 ¶89.  The electronic claims data expressly contained the same disclosure.  **Exh. 5**.  The Colorado district court previously dismissed Cigna's fraud claims because such disclosures rendered Cigna's fraud claims implausible, which collaterally estops Cigna from asserting the same claim here.  **Exh. 3** at 16.  Because the ASCs disclosed this information, Cigna has no fraud claim based on its "non-disclosure," even if Cigna had adequately pleaded the other elements of fraud.

Similarly, Cigna fails to plead fraud by omission.  Cigna complains that the ASCs did not tell Cigna how they calculated charges, which Cigna complains were billed to Cigna "at a much higher rate" than would have been used if the ASCs had billed both the patients and Cigna at in-network prices, instead of charging an overall out-of-network price for services rendered, but reducing the patient's responsibility for co-payments and deductibles to approximate in-network rates.  ECF No. 1 ¶172.  However, Cigna does not identify a contractual provision, statutory requirement, special relationship, or any other legal basis for the ASCs' alleged "duty" to disclose its pricing information to Cigna. *See Fimbal*, 695 N.E.2d at 127.  The ASCs' silence regarding its billing calculations simply is not fraud. *Autoxchange.com, Inc.*, 816 N.E.2d at 51; *cf. Langford,* 231 F.3d at 1314.  Nor can Cigna plausibly contend that it was "misled" by the words "this bill" on the ASCs' claims forms into thinking that the patient's portion of the bill was calculated on the same metric as the overall charge, ECF No. 1 ¶¶89-90, given that those

23

words were used in the very phrase disclosing the ASCs' "reduced" pricing calculation for patient deductibles and copays, as set forth above in Section IV.B.3.

Finally, Cigna fails to plead reasonable reliance. Its bald and conclusory statements that it "relied on such material false statements" (none of which Cigna specifically identifies anywhere in the Complaint, in contravention of Rule 9(b)) "and omissions," ECF No. 1 ¶175, are contradicted by Cigna's *admissions* elsewhere in the Complaint that it did not pay the charges identified in claims forms, but instead paid only a portion of those charges based on its calculation of the Maximum Reimbursable Charge, which in turn could be derived from what other providers or Medicare charged for the same services. *Id*. ¶¶ 46, 58, 52-53; *People v. Brigham*, 261 A.D.2d 43, 48-51 (N.Y. 1999); *Trail v. Boys & Girls Clubs of NW Ind.,* 845 N.E.2d 130, 134 (Ind. 2002) (court need not accept as true "allegations that are contradicted by other allegations or exhibits attached to or incorporated in the pleading" when ruling on a motion to dismiss). Cigna's fraud claim should be dismissed.

### 3.    *Cigna Fails to Plead Aiding and Abetting Fraud*

Indiana does not recognize a civil cause of action for "aiding and abetting fraud" as that claim is pleaded by Cigna. Instead, Indiana has a *criminal* statute regarding aiding and abetting specific types of fraud, none of which Cigna pleads here. *See* I.C. §35-32-2-4; §35-43-5-4 *et seq*. Indiana also recognizes a *civil* cause of action against an agent or its master for aiding and abetting in the commission of a tort where the tortious act is done "in violation of a duty imposed by law." *See, e.g., Bates Motor Transp. Lines v. Mayer*, 213 Ind. 664, 672 (1938) (principal responsible for negligence of his agent whose driving resulted in death of family); *McDonald v. Smart Professional Photo Copy Corp*., 664 N.E.2d 761 (Ind. Ct. App. 1996) (principal may be responsible for agent's fraud); *Compare State Employment Sec. Bd.v. Motor Exp*., 69 N.E.2d 603

(Ind. Ct. App. 1946) (no benefits liability because so-called "agents" were actually "engaged in an independently established business").

Here, Cigna fails to plead that either the ASCs or SurgCenter had a "duty imposed by law" to disclose specific information to Cigna or that SurgCenter's business assistance to the ASCs violated that "duty."  Nor does Cigna allege that the ASCs are somehow SurgCenter's "agents" -- which, if true, would be a further reason Cigna's RICO claims should be dismissed for failure to plead an "enterprise" separate from the defendants or the pattern or racketeering activity.  Instead, Cigna tries to characterize the ordinary business activities of SurgCenter, none of which are tortious in and of themselves, as "aiding" in the ASCs' alleged "fraud."  ECF No. 1, ¶¶177-183.  Indiana law does not support Cigna's dramatically expansive view of "aiding or abetting" liability.  *See, e.g., Peters v. Great Dane Trailers, Inc*., 1996 WL 698028, at *5-6 (N.D. Ind. Oct. 10, 1996) (officer is not liable for the corporation's torts even if he was involved in purchasing equipment, made decisions not to install certain equipment, and ignored warnings and notices because none of these activities were independently tortious).

Separately, Cigna's "aiding and abetting" claim also should be dismissed because Cigna failed to sufficiently plead the underlying "fraud" allegedly committed by the ASCs, as set forth above.  Consistent with the Colorado district court, this Court should dismiss Cigna's aiding and abetting claim, with prejudice.  *See* **Exh. 3** at  16.

4. *Cigna Fails to Plead Negligent Misrepresentation*

The general rule in Indiana, called the "economic loss" rule, is that a "defendant is not liable under a tort theory for any purely economic loss caused by its negligence."  *U.S. Bank v. Integrity Land Title Corp*., 929 N.E.2d 742, 745 (Ind. 2010); *Indianapolis-Marion Cty Pub. Library v. Charlier Clark & Linard, P.C*., 929 N.E.2d 722, 726-27 (Ind. 2010).  Even though

Cigna claims purely economic losses, ECF No. 1 ¶191, Cigna tries to squeeze its complaint into one of the "special circumstances" in which Indiana law permits a tort claim to proceed even where damages are purely economic: "negligent misstatement." *Integrity*, 929 N.E.2d at 745-46.

The tort of negligent misrepresentation, embodied in the Restatement (Second) of Torts § 552, has not been "adopted. . . without limitation" in Indiana. *Thomas v. Lewis Eng'g*, 848 N.E.2d 758, 760 (Ind. Ct. App. 2006). Specifically, Indiana only recognizes this tort in the context of (1) the employment relationship, *Thomas*, 848 N.E.2d at 760, (2) the provision of title insurance, *Integrity*, 929 N.E.2d at 748, and (3) where a professional "actually knew" a third-party consumer would rely on his false representation and the consumer so relied, *Thomas*, 848 N.E.2d at 761; *Jeffrey v. The Methodist Hospitals*, 956 N.E.2d 151,157 (Ind. Ct. App. 2011). Moreover, the economic loss rule precludes "negligent misrepresentation" claims against defendants who, though not in "privity" of contract with the plaintiff, are nonetheless connected to the plaintiff through a "chain of contracts." *Charlier*, 929 N.E.2d 722.

Cigna's "negligent misrepresentation" claim should be dismissed for numerous reasons. First, no Indiana court has extended this tort to encompass the business dealings between two companies. Second, Cigna alleges that the ASCs' obligation to charge patients out-of-network copays and deductibles stems from patients assigning their right to reimbursement to the ASCs. ECF No. 1 ¶¶ 43, 44, 54, 57. Because Cigna's negligent representation theory is based on precisely the sort of "chain of contract" that the economic loss rule precludes, Cigna cannot maintain this claim. *Charlier*, 929 N.E.2d 722. Third, the ASCs actually disclosed their practice of reducing the patient's portion of a bill to approximate in-network rates, in both the paper and electronic claims submitted to Cigna. ECF No. 1 ¶89; **Exh. 5**. Therefore, the ASCs did not make a "misrepresentation," as a matter of law, as the Colorado district court previously held.

**Exh. 3** at 16.  While Cigna contends that it *also* had a right to know the methodology that the ASCs used to calculate their service charges, ECF No. 1 ¶ 189, Cigna does not identify any source of this so-called obligation.  Finally, Cigna has not plausibly alleged reliance on any (unidentified) misstatement or omission related to the claims forms, given that Cigna pleads numerous ways in which Cigna does "not automatically cover or reimburse every 'charge' the provider submits to Cigna." *Id*. ¶¶ 52, 53, 58, 62.

　　　　　　5.　　　*Cigna Fails to Plead Unjust Enrichment*

Cigna simultaneously pleads that the terms of its plans govern this dispute, that Cigna is entitled to reimbursement under the terms of those plans and that the "ASCs, as the authorized recipient of these funds and/or their assignee" are bound by the plan language, ECF No. 1 ¶¶213-224, while *also* arguing that Cigna is entitled to relief under a theory of unjust enrichment, *id*. ¶¶ 192-98.  Yet even when pleading "unjust enrichment," Cigna cites to the terms of "Cigna's plans" as governing Cigna's and the ASCs' obligations under the plans.  *Id*. ¶¶ 194, 197.  In so doing, Cigna pleads itself out of court on its unjust enrichment claim.

"A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment." *U.S. Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1546-47 (2013) (citation omitted).  In *Advanced Ambulatory Surgical Center v. Cigna Healthcare of Ill*., a nearly identical case, the ambulatory care center ("AASC") brought suit against Cigna for refusing to pay claims.  *See* 2014 WL 4914299, at *1.  Cigna argued that it could refuse to pay such claims because AASC had engaged in alleged "fee-forgiving."  *Id*. The court dismissed AASC's unjust enrichment claim, holding that "[c]laims of this sort merely recast under state-law what otherwise would be a traditional challenge to an ERISA plan administrator's interpretation of the terms of a plan." *Id*. at *2 (citing *Access Mediquip, LLC v.*

*UnitedHealthcare Ins. Co*., 662 F.3d 376, 386-87 (5th Cir. 2011)).   AASC was a "plan beneficiary by virtue of its status as the assignee of each of the ERISA patients," and as such, the duties of AASC under the plan derived "entirely from the particular rights and obligations established by the benefit plans." *Id.* at *2 (citation omitted); *See also McCutchen*, 133 S. Ct. at 1548 ("The agreement itself becomes the measure of the parties' equities.").   Consequently, ERISA pre-empted the unjust enrichment claim.  *Cigna*, 2014 WL 4914299, at *2.

Not only is the *Cigna* case directly applicable here, but it should also collaterally estop Cigna from arguing, in *this* case, that it can maintain both contract-based claims and a claim for unjust enrichment.[9]   But independent of pre-emption and collateral estoppel, Cigna's unjust enrichment claim also fails because Cigna fails to plead, in the alternative, that the Cigna plans are "either void or unenforceable."  *See Comentis, Inc. v. Purdue Research Found*., 765 F. Supp.2d 1092, 1103 (N.D. Ind. 2011).  A plaintiff cannot both claim that a contract governs the parties' dispute, while simultaneously asserting a claim for equitable relief unless the plaintiff also pleads that the "contract did not exist but equity demands that the injury be compensated." *Id.* (collecting authority).  Here, Cigna fails to allege that it is entitled to equitable relief because it fails to plead that its plans are void or unenforceable -- instead, Cigna frames its entire complaint upon Cigna's interpretation of the plans' language. ECF No. 1.  For this reason as well, Cigna's unjust enrichment claim should be dismissed.

### D.    Cigna's ERISA Claims Fail

Cigna's Complaint, which consists of a myriad of claims allegedly related to various types of plans that it administers, glosses over critical distinctions among these plans.  In its Complaint, Cigna jumbles together generalized allegations related to plans sponsored by

---

[9] Cigna argued that state law claims for unjust enrichment, fraud, and misrepresentation asserted by a plan beneficiary were preempted in *Advanced Ambulatory Surgical Center*, 2014 WL 4914299, at *2-3.

governmental and church employers, plans which are self-funded, and plans which are fully insured. ECF No. 1 ¶¶36-39.   Additionally, Cigna has not asserted specific claim by claim allegations with respect to each plan under which it is seeking relief.   Rather, Cigna simply attaches "exemplar" plans.  However, Cigna does not allege that each plan is in fact identical. Rather, the allegations demonstrate otherwise.   For example, the documents attached to the Complaint establish that approximately 40% of the plans were non-ERISA plans.  ECF No. 1-4 to 1-14.  Moreover, Cigna attached a plan that was effective January 1, 2015 (ECF No. 1-15), yet all of the claims of which Cigna complains (ECF No. 1-4 to 1-14) predate that plan.   Given the inherent issues with the way Cigna has attempted to combine its claims in this case, Cigna has failed to meet proper pleading standards because it does not properly identify the claims applicable to each plan, nor does it include necessary documentation regarding each plan that Cigna has put at issue by filing this lawsuit.[10]

1.  *Cigna Lacks Standing*

Cigna seeks to recover payments it made "as a fiduciary as claims administrator of the ASO and fully-insured plans."  ECF No. 1 at ¶ 214.  Cigna's Complaint, therefore, generally lumps together all of the plans that it oversees.  However, as Cigna admits in its Complaint, the "majority" of the Cigna-administered plans are ASO plans.  *Id.* at ¶ 37.  This means that the employer, not Cigna, funds the plan.  Cigna merely serves as the plan's claims administrator.  *Id.* Additionally, Cigna admits that some of the plans are not governed by ERISA at all because they are sponsored by governmental or church employers.  *Id.* at ¶ 45.  Yet in Counts VII and VIII, Cigna makes no attempt to limit its recovery to certain plans, but rather generally refers Cigna's attempt to recover on behalf of the plans.  *Id.* at ¶ 223, 230.

---

[10] Depending on what claims remain, if any, this Court may be forced to correct Cigna's deficient pleading by severing claims based on the proper plan classification and plan terms.

29

Cigna's Complaint commingles claims belonging to a variety of plans but does not attempt to identify the specific claims asserted on a plan by plan basis. Defendants do not dispute that Cigna has standing to assert ERISA claims on behalf of the plans which Cigna fully insures. Additionally, given the allegations in the Complaint, there may be some self-insured plans in which Cigna acts as a fiduciary. However, since Cigna failed to attach the plan documents for every plan it is asserting claims for, SurgCenter and the ASCs have no way to know whether Cigna is a fiduciary under the terms of each plan.[11]

Cigna cannot assert ERISA claims on behalf of the plans sponsored by governmental or religious employers because these plans are exempt from ERISA coverage. *See Stapleton v. Advocate Health Care Network & Subsidiaries,* 76 F. Supp. 3d 796 (N.D. Ill. 2014) (citing 29 U.S.C. §§ 1002(32), 1003(b)(1), 1003(b)(2) and noting that "Congress explicitly exempted certain types of plans from the scope of ERISA, including those set up by federal, state, local, or tribal governments…as well as any church plan"). According to the documents attached to the Complaint, approximately 40% of the plans Cigna claims to represent are plans that are not covered under ERISA. Therefore, Cigna cannot assert ERISA claims on behalf of these plans because these plans are not governed by ERISA.

As it relates to self-insured plans under which Cigna is not a fiduciary, Cigna does not have standing to sue for ERISA claims because Cigna cannot demonstrate an "injury in fact", which is a requirement for standing. If any injury did occur, the injury would have been suffered

---

[11] Acting as a plan administrator does not, by itself, establish that Cigna is a fiduciary. *See Klosterman v. Western Gen. Management*, 32 F.3d 1119, 1122 (7th Cir. 1994) (noting that a "fiduciary of a plan is defined as anyone who exercises any discretionary authority or discretionary control respecting management of such plan . . . or has any discretionary authority or discretionary responsibility in the administration of such plan" and that "a person deemed to be a fiduciary is not a fiduciary for every purpose but only to the extent that he performs one of the described functions"). Without attaching the plans to the Complaint, there is no way for this Court or the Defendants to determine under which plans Cigna may be a fiduciary as it relates to the issues in this case.

by the plans that paid the claims, not Cigna.  Therefore, Cigna cannot assert claims under ERISA for the self-insured plans under which Cigna did not serve in a fiduciary capacity.

Cigna also does not have constitutional standing to assert claims in its own name for those plans under which Cigna may in fact be a fiduciary.  As noted in *Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 52 (1st Cir. 2014), there is a distinction between constitutional standing and statutory standing.  *See also Faber v. Metro Life Ins. Co.*, 648 F.3d 98 (2d Cir. 2011) (seeking restitution or disgorgement under ERISA "requires that a plaintiff satisfy the structures of constitutional standing by demonstrating individual loss" whereas to obtain injunctive relief, it may be not necessary to show individual harm).  Although a fiduciary may have the ability to assert claims under ERISA, thereby conferring statutory authority on Cigna, the plaintiff in the action is Cigna in its individual capacity.  Cigna makes no effort to designate itself as the plaintiff suing on behalf of the plans in its fiduciary capacity.  Cigna's role as a fiduciary is no different than a trustee who brings a claim on behalf of a trust.  In that case, if the trust is the injured party, the trustee asserts the claim on behalf of the trust, but not in his/her individual capacity.  *See e.g. The Thomas D. Philipsborn Irrevocable Ins. Trust v. Avon Capital, LLC*, 2013 WL 6068797, at *1-3 (N.D. Ill. Nov. 18, 2013) (explaining that the trustee should have been the party asserting the claims and naming the trustee, in his role as a trustee, as the plaintiff).  Because Cigna filed a Complaint that attempts to commingle claims belonging to various types of plans and made no effort establish an injury in fact, even though it may have statutory standing, it does not have constitutional standing under Article III to sue in its own name for injuries suffered by the plans under which Cigna is a fiduciary.

2.    *Cigna's Equitable Lien Claim Fails to State a Claim*

Cigna also claims that it is entitled to an equitable lien by agreement for any

overpayments made to SurgCenter and the ASCs. ECF No. 1 at ¶¶41-43, 220. Specifically, Cigna tries to seek restitution under ERISA Section 502(a)(3).   ERISA 502(a)(3) authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which…violates…the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of …the terms of the plan." 29 U.S.C. § 1132(a)(3). *See also Sereboff v. Mid. Atl. Med. Servs.*, 547 U.S. 356, 361-2 (2006). Both the Maryland and Colorado courts previously rejected Cigna's equitable lien/restitution theory, collaterally estopping Cigna from continuing to pursue it in this forum. *See, e.g.*, **Exh. 3** at 6-8; **Exh. 4** at 15-29. Regardless, this claim fails.

In *Sereboff*, the Supreme Court addressed an equitable lien by agreement claim. The employee benefit plan contained language that allowed the plan to recover the medical payments it made to a beneficiary if a beneficiary recovered payments (either through settlement, a lawsuit, or otherwise) from a third-party. *Id.* at 359. After the plan beneficiaries, who were injured in a car accident, received a settlement payment from a third-party tortfeasor, the fiduciary of the plan sought restitution for the medical payments it had made pursuant to the plan. The funds received from the settlement with the third party were placed in an investment account. *Id.* at 360. The Court held that an equitable lien by agreement could be asserted because the funds were "specifically identifiable," "within the possession and control of the [defendants], and were preserved in the investment account." *Id.* at 362-3; *see also Pactiv Corp. v. Sanchez*, 2015 WL 4508667, at * 5 (N.D. Ill. July 23, 2015).

Here, like the Colorado and Maryland courts already held, there are not specifically identifiable funds sufficient to assert a Section 502(a)(3) claim. **Exh. 3** at 6-8; **Exh. 4** at 15-29. In *Sereboff* and subsequent cases, the funds being recouped had been paid from a third party

32

source or were funds set aside in distinguishable, separate accounts.  Cigna does not adequately allege that the funds to which it claims entitlement are from identifiable third-party payments or in distinguishable accounts; indeed, its allegation intimating it does so is directly belied by the language in the "exemplar" plan.  ECF No. 1 at ¶¶ 41-43 & Ex.1 at 43.  Cigna merely seeks to recover funds paid by the plans and which are now in the ASCs' general accounts.  Thus, the funds are not specifically identifiable and not properly the subject of a § 502(a)(3) claim.[12]

The plan language Cigna cites, *id.*, does not establish the existence of an equitable lien.  As explained in great detail by the Maryland court, the language Cigna relies on, which is the same language Cigna relies on here, merely demonstrates that Cigna may be entitled to some funds if an overpayment is made.  *See* **Exh. 4** at 22-26; ECF No. 1, Ex.1 at 43 ("When an overpayment has been made by CG, CG will have the right at any time to: (a) recover that overpayment from the person to whom or on whose behalf it was made; or (b) offset the amount of the overpayment from a future claim payment.").  Contrary to the language in *Sereboff* and even in Cigna's own provision regarding third-party payments, the language contained in the overpayments section cannot be reasonably understood by a plan member or provider as asserting an equitable lien or constructive trust on plan overpayments to providers.  *See* **Exh. 4** at 26 ("The language used in the Overpayment Provision cannot be understood by a plan member – or a provider that is not a party to the plan – as asserting an equitable lien or constructive trust on plan overpayments to providers.").  Accordingly, no equitable lien is established by the language in the "exemplar" plan.

### E.    Cigna's Declaratory Judgment Claim Fails

"The Declaratory Judgment Act by its own terms grants district courts discretion in

---

[12] Additionally, as noted above, Cigna cannot assert an ERISA § 502(a)(3) claim for nearly 40% of the plans referenced in the Complaint because they are not plans covered under ERISA.

determining whether to entertain such an action." *Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1133 (7th Cir. 2012). The court's discretion extends to dismissal of such claims, particularly where such a claim "adds nothing to what will already have been determined" in resolving a parties' other contentions. *See Volvo Trucks N. Am. v. Andy Mohr Truck Center*, 2013 WL 2939052, at *5 (S.D. Ind. June 14, 2013) ("a court may properly decline to assume jurisdiction in a declaratory action when [another] other remedy would be more effective or appropriate") (alteration in original).

Cigna's claim for declaratory judgment is simply an attempt by Cigna to recast its doomed ERISA restitution claims. Cigna essentially declares a breach of contract and requests a determination that "the ASCs must return all sums received from Cigna," ECF No. 1 ¶ 232, based on its contention that the ASCs' charges "are not covered under the relevant plans" *id.* ¶ 229. Simply recasting the claim as a claim for declaratory judgment does not turn an otherwise legal claim into an equitable claim. *See NewPage Wis. Sys., Inc. v. United Steel, Paper & Forestry, Rubber, Mfg'g, Energy Allied Indus. & Serv. Workers Int'l Union*, 651 F.3d 775, 777 (7th Cir. 2011) (holding that "relief properly called "legal" rather than "equitable" is not covered by §502(a)(3)—and not all equitable relief is "appropriate" in a given suit."). The Colorado court used this approach when Cigna sought declaratory relief pursuant to ERISA §502(a)(3). *See* **Exh. 3** at 8. The court should dismiss Cigna's declaratory judgment claim.

## V.   CONCLUSION

For the foregoing reasons, Cigna's RICO, ERISA restitution, declaratory judgment, and state law claims for fraud, aiding and abetting fraud, negligent misrepresentation, and unjust enrichment should be dismissed, with prejudice.

34

BARNES & THORNBURG LLP


By  /s/  Brian E. Casey
    Brian E. Casey (23263-71)
    *brian.casey@btlaw.com*
    Kelly J. Hartzler (24929-20)
    *kelly.hartzler@btlaw.com*
700 1st Source Bank Center
100 North Michigan Street
South Bend, Indiana  46601-1632
Telephone:  (574) 233-1171
Facsimile:   (574) 237-1125

Alice J. Springer (25105-64)
*alice.springer@btlaw.com*
121 W. Franklin, Suite 200
Elkhart, Indiana  46516-3200
Telephone:  (574) 293-0681
Facsimile:   (574) 296-2535

ATTORNEYS FOR DEFENDANTS

35

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on September 14, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Daniel K. Ryan                       Joshua B. Simon (PHV)
Hinshaw & Culbertson LLP        Warren Haskel (PHV)
222 North LaSalle Street, Suite 300   Kirkland & Ellis LLP
Chicago, IL  60601-1081          601 Lexington Avenue
                                  New York, NY  10016


BARNES & THORNBURG LLP


By /s/  Brian E. Casey _____

SBDS01 416609v1