## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA

|  |  |
|---|---|
| **CONNECTICUT GENERAL LIFE INSURANCE COMPANY, CIGNA HEALTH AND LIFE INSURANCE COMPANY** | |
| **PLAINTIFFS,** | **Civil Action No.: 2:15-cv-253-JD-PRC** |
| **V.** | |
| **NORTHWEST REGIONAL SURGERY CENTER, LLC, ADVANCED REGIONAL SURGERY CENTER LLC, CARMEL SPECIALTY SURGERY CENTER LLC, COLUMBUS SPECIALTY SURGERY CENTER LLC, INDIANA SPECIALTY SURGERY CENTER LLC, METRO SPECIALTY SURGERY CENTER LLC, MIDWEST SPECIALTY SURGERY CENTER LLC, MUNSTER SPECIALTY SURGERY CENTER LLC, RIVERVIEW SURGERY CENTER LLC, SOUTH BEND SPECIALTY SURGERY CENTER LLC, SYCAMORE SPRINGS SURGERY CENTER LLC, SURGICAL CENTER DEVELOPMENT, INC. D/B/A SURGCENTER DEVELOPMENT, SURGICAL CENTER DEVELOPMENT #3 LLC** | |
| **DEFENDANTS.** | |

## CIGNA'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 3

ARGUMENT ........................................................................................................... 6

I.      **Issue Preclusion Does Not Bar Any of Cigna's Claims.** ........................... 6

      A.      The Prior Decisions Did Not Involve Issues "Identical" to Those Cigna Raises Here, and the Issues Here Have Not Been "Actually Litigated" on the Merits. ....................................................................................................... 7

      B.      Issue Preclusion Is Improper Where, As Here, the Party Has Previously Prevailed on the Issue. ......................................................................... 11

II.     **Cigna Has Adequately Pled Its Federal Claims.** ...................................... 12

      A.      Cigna Has Pled an ERISA Section 502(a)(3) Claim (Count VIII). ..................... 12

                 1.   Cigna Need Not Prove Up Every Claim at the Pleadings Stage. ................... 12

                 2.   Cigna Can Maintain a Section 502(a)(3) Claim for All ERISA Plans. .......... 14

                 3.   Cigna Has Properly Pled an Equitable Lien by Agreement. ........................... 16

      B.      Cigna Has Pled a Declaratory Judgment Claim (Count IX). ................. 21

III.   **ERISA Does Not Preempt Cigna's State-Law Claims Because These Claims Implicate Defendants' Independent Legal Duties.** ....................................... 22

IV.   **Cigna's State-Law Claims Are Properly Pled.** ......................................... 23

      A.      Cigna's Fraud-Based Claims All Survive Dismissal. ........................... 23

                 1.   Cigna Has Pled Fraud (Count I). ..................................................... 23

                 2.   Cigna Has Pled Aiding and Abetting Fraud (Count II). ................. 29

                 3.   Cigna Has Pled Negligent Misrepresentation (Count III). ............. 30

      B.      Cigna Has Pled Unjust Enrichment (Count IV). .................................. 31

      C.      Cigna Has Pled Its Tortious Interference Claims (Counts V-VI). ......... 33

      D.      Cigna Has Pled a Civil Conspiracy (Count VII). ................................. 34

CONCLUSION ..................................................................................................... 35

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABN AMRO Mortg. Grp., Inc. v. Maximum Mortg., Inc.*,
   2005 WL 1162889 (N.D. Ind. May 16, 2005) ........................................................34

*Advanced Ambulatory Surgery Center v. Cigna Healthcare of Ill.*,
   2014 WL 4914299 (N.D. Ill. Sept. 30, 2014) ..................................................32, 33

*Aetna v. Davila*,
   542 U.S. 200 (2004).............................................................................................22

*Am. United Life Ins. Co. v. Douglas*,
   808 N.E.2d 690 (Ind. Ct. App. 2004)...................................................................27

*Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*,
   2015 WL 1041515 (D. Colo. Mar. 6, 2015) ............................................... *passim*

*Bates Motor Transp. Lines v. Mayer*,
   213 Ind. 664 (1938).............................................................................................29

*Bd. of Trustees of Nat'l Elevator Indus. Health Ben. Plan v. Montanile*,
   593 F. App'x 903 (11th Cir. 2014), 135 S.Ct. 1700 (2015)...................................10

*Bd. of Trustees of the Nat'l Elevator Indus. Health Ben. Plan v. Montanile*,
   2014 WL 8514011 (S.D. Fla. Apr. 18, 2014) .......................................................19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................12

*Bilmoria Computer Sys. v. Amer. Online, Inc.*,
   829 N.E.2d 150 (Ind. Ct. App. 2005)...................................................................34

*Bilyeu v. Morgan Stanley Long Term Disability Plan*,
   683 F.3d 1083 (9th Cir. 2012) ............................................................................10

*Boomer v. AT&T Corp.*,
   309 F.3d 404 (7th Cir. 2002) ..........................................................................8, 11

*Bunger v. Demming*,
   40 N.E.3d 887 (Ind. App. 2015) ..........................................................................35

*Carlson v. CSX Transp., Inc.*,
   758 F.3d 819 (7th Cir. 2014) ..............................................................................12

ii

TABLE OF AUTHORITIES (CONT'D)

**Pages(s)**

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Lewis*,
  871 F. Supp. 2d 771 (N.D. Ill. 2012), 745 F.3d 283 (7th Cir. 2014) ......................................19

*Coleman v. C.I.R.*,
  16 F.3d 821 (7th Cir. 1994) ..........................................................................................8

*Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*,
  2015 WL 4394408 (D. Md. Jul. 15, 2015)........................................................... *passim*

*Conn. Gen. Life Ins. Co. v. Ambulatory Health Sys., LLC*,
  2013 WL 1003495 (E.D. Tex. Mar. 13, 2013) ..........................................................16

*Conn. Gen. Life Ins. Co. v. Roseland Ambulatory Ctr. LLC*,
  2013 WL 5354216 (D.N.J. Sept. 24, 2013) ..........................................................17, 18

*Conn. Gen. Life Ins. Co. v. Sw. Surgery Ctr., LLC*,
  2015 WL 6560536 (N.D. Ill. Oct. 29, 2015).......................................................... *passim*

*Conn. Gen. Life Ins. Co. v. Tex. Spine & Joint Hosp., Ltd.*,
  6:14-cv-765 (E.D. Tex. Sept. 10, 2015)...................................................................15

*Conn. Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP*,
  2015 WL 5122269 (D. Conn. Aug. 31, 2015) ....................................................... *passim*

*Encompass Office Solutions, Inc. v. Conn. Gen. Life Ins. Co.*,
  2013 WL 1194392 (N.D. Tex. Mar. 25, 2013) ..........................................................14

*Enservco, Inc. v. Ind. Sec. Div.*,
  623 N.E.2d 416 (Ind. 1993) ..........................................................................................26

*Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare
  Trust Fund*,
  538 F.3d 594 (7th Cir. 2008) ..........................................................................................23

*Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*,
  804 F.2d 390 (7th Cir. 1986) ..................................................................................7, 9, 10

*Gordon v. Bank of N.Y. Mellon Corp.*,
  964 F. Supp. 2d 937 (N.D. Ind. 2013) .......................................................................35

*Grace Vill. Health Care Facilities, Inc. v. Lancaster Pollard Co.*,
  896 F. Supp. 2d 757 (N.D. Ind. 2012) .......................................................................34

*Greg Allen Constr. Co., Inc. v. Estelle*,
  798 N.E.2d 171 (Ind. 2003) ..........................................................................................31

*Gutta v. Standard Select Trust Ins. Plans*,
  530 F.3d 614 (7th Cir. 2008) ...........................................................................10, 18, 19, 20

131250131v1 0974595

<u>TABLE OF AUTHORITIES (CONT'D)</u>

**Pages(s)**

*Harrison Mfg., LLC v. Bienias*,
    2013 WL 6486668 (S.D. Ind. Dec. 10, 2013) .......................................................................30

*Hobley v. Burge*,
    2004 WL 1243929 (N.D. Ill. June 3, 2004) ..........................................................................6

*Huntington Mortg. Co. v. Debrota*,
    703 N.E.2d 160 (Ind. Ct. App. 1998)....................................................................................34

*In re Curtis*,
    2006 WL 1506209 (Bankr. C.D. Ill. May 24, 2006) ...........................................................28

*In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*,
    712 F. Supp. 2d 776 (N.D. Ind. 2010) .................................................................................10

*Indianapolis-Marion County Public Library v. Charlier Clark & Linard, P.C.*,
    929 N.E.2d 722 (Ind. 2010) .................................................................................................31

*Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Welfare Plan Bd. of
    Trustees v. S. Gate Ambulatory Surgery Ctr., LLC*,
    2011 WL 4080054 (N.D. Cal. 2011) ..............................................................................18, 21

*Iom Grain, LLC v. Ill. Crop Improvement Ass'n, Inc.*,
    2015 WL 195988 (N.D. Ind. Jan. 14, 2015) ........................................................................35

*J & J Sports Prods., Inc. v. Kikalos*,
    2015 WL 2412500 (N.D. Ind. May 21, 2015) ......................................................................24

*Joslyn Mfg. Co. v. Liberty Mut. Ins. Co.*,
    939 F. Supp. 603 (N.D. Ill. 1996) ........................................................................................11

*Krighbaum v. First Nat'l Bank & Trust*,
    776 N.E.2d 413 (Ind. Ct. App. 2002)...................................................................................34

*Levee v. Beeching*,
    729 N.E.2d 215 (Ind. App. 2000) ........................................................................................33

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    778 F.2d 1352 (9th Cir. 1985) ...............................................................................................9

*Makoul v. Prudential Ins. Co. of Am.*,
    2013 WL 3874045 (N.D. Ill. July 25, 2013)........................................................................20

*Marquette Bank v. Brown*,
    2015 WL 1505685 (S.D. Ind. Mar. 31, 2015).......................................................................32

*Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*,
    2014 WL 1028351 (E.D. Cal. Mar. 14, 2014) ......................................................................16

131250131v1 0974595

TABLE OF AUTHORITIES (CONT'D)

**Pages(s)**

*O'Brien-Shure v. U.S. Labs., Inc. Health & Welfare Ben. Plan*,
    2013 WL 3321569 (N.D. Ill. July 1, 2013)................................................................18

*Pa. Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*,
    802 F.3d 926 (7th Cir. 2015) ......................................................................14

*Parklane Hosiery Co., Inc. v. Shore*,
    439 U.S. 322 (1979)................................................................................11, 12

*People v. Brigham*,
    261 A.D.2d 43 (N.Y. 1999) ....................................................................28

*Peters v. Great Dane Trailers, Inc.*,
    1996 WL 698028 (N.D. Ind. Oct. 10, 1996)........................................29

*Peterson v. Clark Leasing Corp.*,
    451 F.2d 1291 (9th Cir. 1971) ....................................................................7

*Reed v. Reid*,
    980 N.E.2d 277 (Ind. 2012) ................................................................34

*Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*,
    478 F. Supp. 2d 1076 (S. D. Ind. 2007) ..............................................34

*Reliance Standard Life Ins. Co. v. Smith*,
    2006 WL 2993054 (E.D. Tenn. Oct. 18, 2006) ..................................18

*Richards v. Mitcheff*,
    696 F.3d 635 (7th Cir. 2012) ....................................................................6

*Robertson v. Yamaha Motor Corp., U.S.A.*,
    143 F.R.D. 194 (S.D. Ill. 1992) ............................................................11

*Rozoginski v. Hartford Life & Acc. Ins. Co.*,
    2007 WL 2409810 (N.D. Ill. Aug. 21, 2007) ....................................19

*Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*,
    786 F.3d 510 (7th Cir. 2015) ................................................................23

*Schmidt Enters., Inc. v. State*,
    170 Ind. App. 628 (1976)........................................................................29

*Sereboff v. Mid Atlantic Medical Services, Inc.*,
    547 U.S. 356 (2006)........................................................................ *passim*

*Smith v. Biomet, Inc.*,
    384 F. Supp. 2d 1241 (N.D. Ind. 2005) ..............................................35

131250131v1 0974595

TABLE OF AUTHORITIES (CONT'D)

Pages(s)

*Swanson v. Citibank, N.A.*,
  614 F.3d 400 (7th Cir. 2010) ................................................12

*T.G. v. Remington Arms Co., Inc.*,
  2014 WL 1310285 (N.D. Okla. Mar. 28, 2014) ................................12

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ................................................6

*Thompson v. Best*,
  478 N.E.2d 79 (Ind. Ct. App. 1985) ................................................26

*Thurber v. Aetna Life Ins. Co.*,
  712 F.3d 654 (2d Cir. 2013) ................................................10

*Tri State Advanced Surgery Ctr., LLC v. Health Choice, LLC, et al.*,
  2015 WL 8522075 (E.D. Ark. Sept. 30, 2015) ................................*passim*

*U.S. Bank, N.A. v. Integrity Land Title Corp.*,
  929 N.E.2d 742 (Ind. 2010) ................................................30, 31

*U.S. Gypsum Co. v. Ind. Gas Co., Inc.*,
  350 F.3d 623 (7th Cir. 2003) ................................................6

*Wasau Underwriters Ins. Co. v. United Plastics Group, Inc.*,
  2010 WL 538544 (N.D. Ill. Feb. 10, 2010) ................................................8, 9, 10

*Watkins v. Penn*,
  2007 WL 4224200 (S.D. Ind. Nov. 26, 2007) ................................................35

*Woodruff v. Ind. Family & Soc. Servs. Admin.*,
  964 N.E.2d 784 (Ind. 2012) ................................................31

*Zoeller v. E. Chi. Second Century, Inc.*,
  904 N.E.2d 213 (Ind. App. 2009) ................................................2, 32

**Statutes**

29 U.S.C. § 1132(a)(3) ................................................14, 16

**Rules**

Fed. R. Civ. P. 8 ................................................12, 13, 14

Fed. R. Civ. P. 8(a)(2) ................................................12

Fed. R. Civ. P. 12(b)(6) ................................................6, 11, 15, 23

131250131v1 0974595

# PRELIMINARY STATEMENT[1]

Cigna's Complaint explains in detail how Defendants-ASCs, with SurgCenter's help, used fee-forgiving and dual-pricing schemes to defraud Cigna out of millions of dollars. The ASCs did so by billing enormous charges to Cigna that bore no relation to the charges they actually used to charge their patients, drastically reducing patients' responsibility for medical care treatment, and hiding these unlawful actions from Cigna. The Complaint also explains how Defendants' conduct gives rise to liability under state-law theories (for claims under Cigna-administered non-ERISA plans) as well as under ERISA (for claims subject to ERISA).

In seeking partial dismissal,[2] Defendants cite to three Rule 12(b)(6) decisions by out-of-circuit district courts that addressed Cigna's claims against SurgCenter and SurgCenter-related ambulatory surgical centers, and contend that those lawsuits involved "virtually identical claims" to those Cigna pleads here. (Br. at 5.) But Defendants fail to mention that those courts also squarely rejected many of the same arguments Defendants raise here—finding that: (1) Cigna has standing to pursue its claims under ERISA and non-ERISA plans; (2) ERISA does not preempt Cigna's state-law claims; and (3) Cigna has valid claims for unjust enrichment, tortious interference and (with the exception of one court) fraud-based claims against these entities. Defendants repeat these failed arguments, and try several others. None support dismissal.

First, Defendants' attempt to preclude Cigna from raising certain sub-parts of its claims based on out-of-circuit cases ignores the fact that none of those cases involved issues identical to

---

[1] Cigna uses the following abbreviations in this brief. "Cigna" refers to Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company. "Complaint" and "FAC" refers to the First Amended Complaint (Dkt. 37). "Br." refers to Defendants' Brief in Support of Motion to Dismiss the First Amended Complaint (Dkt. 45). "SurgCenter" refers to Defendant Surgical Center Development, Inc. d/b/a SurgCenter Development. "ASCs" refers to the ambulatory surgical centers named as defendants in this action.

[2] Defendants do not challenge Cigna's tortious interference with contract claim (Count VI) or the portion of Cigna's claim for overpayments under ERISA (Count VIII) that seeks injunctive relief. (Br. at 1 n.1.)

those here—that is, the sufficiency of Cigna's fraud allegations **under Indiana law** and the sufficiency of Cigna's declaratory relief and ERISA restitution claims under **Seventh Circuit precedent**.  There is no identity of issues, and thus collateral estoppel does not apply.

Second, Cigna has pled a valid claim for overpayments under ERISA.  Defendants' argument that Cigna "lacks standing" ignores allegations that Cigna is a fiduciary for all plans at issue in its role as the claims administrator, and that it suffered injuries from Defendants' actions. Moreover, Cigna can recover plan overpayments to the ASCs through the equitable lien created by Cigna's plans under *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006).

Third, Cigna's declaratory judgment claim is not duplicative of Cigna's other counts, because it seeks relief for claims under both ERISA and non-ERISA plans.  Moreover, whether it is duplicative is in any event a question best reserved until there is a fully-developed record.

Fourth, as every other court addressing Cigna's state-law claims against SurgCenter-related centers has held, ERISA does not preempt those claims because they all implicate Defendants' independent duties not to commit fraud, tortiously interfere with Cigna's relationships, and unjustly enrich themselves—duties separate from any ERISA obligations.

Fifth, Cigna's fraud-based claims and unjust enrichment claim all survive dismissal.  The ASCs made misrepresentations to Cigna to induce Cigna into overpaying their claims, which is enough to state fraud and negligent misrepresentation claims.  Cigna also has a valid unjust enrichment claim, because it would be unjust for the ASCs to retain payments they obtained through grossly inflated charges.  And SurgCenter can be held liable under conspiracy and aiding and abetting theories for its active participation in these schemes.

Finally, Cigna also stated a claim for tortious interference with business advantage. Defendants orchestrated a letter campaign where they misrepresented Cigna's actions to Cigna's

131250131v1 0974595

clients and urged them to switch to one of Cigna's competitors.  Defendants' fraudulent schemes (which they defended in those letters), along with their misrepresentations in the letters are enough to satisfy the illegal conduct element; so this count, too, survives dismissal.

## STATEMENT OF FACTS

Cigna administers health and welfare benefit plans.  (FAC ¶ 36.)  Cigna funds some of those plans itself; other plans are funded by employers.  (*Id.* ¶¶ 37-39.)  Regardless of the type of funding, Cigna acts as a fiduciary of all plans at issue in its role as the claims administrator.  (*Id.* ¶¶ 37, 40.)  Each plan vests Cigna with discretion to determine eligibility for benefits and construe plan terms, and to recover any overpayments made by the plans.  (*Id.* ¶¶ 40-41.)

One of Cigna's key responsibilities is to control healthcare costs.  Cigna does this in part by contracting with healthcare providers to join Cigna's provider network.  These "in-network" providers agree to contracted rates, and also agree not to bill members for the difference between the allowed amount and the provider's billed charges.  (*Id.* ¶¶ 50-52.)  In return, in-network providers enjoy benefits like access to Cigna's plan members.  (*Id.* ¶ 51.)  Conversely, providers who are "out-of-network" with Cigna—meaning they do not contract to be part of Cigna's network—typically bill higher rates than contracted in-network rates, and can bill patients for the difference between their billed charges and Cigna's allowed amount.  (*Id.* ¶ 53.)

As a claims administrator, Cigna processes and reimburses claims from providers who treat Cigna's plan members.  Providers submit billed charges to Cigna, and Cigna determines which portion of those charges is considered for coverage by the plan (known as the "allowed amount").  (*Id.* ¶ 47.)  Cigna then determines which portion of the allowed amount the plan will pay versus the member.  (*Id.* ¶¶ 48-50.)  In all cases, Cigna relies on the providers' billed charges in making reimbursement decisions.  (*Id.* ¶¶ 47, 53-56, 61-66.)  The amounts ASCs collect from members are also relevant to Cigna's reimbursement decisions, because Cigna's plans do not

3

cover charges that plan members are not obligated to pay.  (*Id.* ¶¶ 60-63.)  Thus, Cigna's plans exclude coverage to the extent the ASC:  (1) does not actually obligate plan members to pay their share of the charges that the ASC submits; (2) does not bill the member for his portion of the charge; or (3) only bills the member for the purpose of obtaining reimbursement from Cigna and is not actually obligating the patient to pay.  (*Id.* ¶ 64.)

Cigna's plans have different types of member cost-sharing responsibilities (including co-payments, deductibles, and co-insurance), depending in part on whether the member goes to an in-network or an out-of-network provider.  (*Id.* ¶¶ 48-50, 54.)  Cigna incentivizes members to seek treatment from in-network providers by, among other things, requiring members to pay a higher portion of the cost of out-of-network services through higher cost-share obligations.  (*Id.* ¶ 57.)  Requiring members to share the higher out-of-network costs helps sensitize members to the true costs of medical services and serves as a check on out-of-network providers' charges—which helps keep down overall healthcare premiums and costs.  (*Id.* ¶¶ 58-59.)

SurgCenter has designed a business model that games this system and circumvents Cigna's cost controls.  (*Id.* ¶¶ 70-100.)  SurgCenter partners with surgeons to create ambulatory surgical centers that are out-of-network with Cigna.  (*Id.* ¶¶ 71-76.)   With SurgCenter's assistance, each ASC here engaged in fraudulent "fee forgiving" and "dual pricing" schemes whereby the ASCs:  (1) attract Cigna plan members by promising to bill them at in-network rates (even though the ASCs are out-of-network providers); (2) submit false charges to Cigna that are much higher than what the ASCs charge members, by calculating members' cost-sharing responsibility based on a 150% Medicare rate multiplier and calculating Cigna's supposed responsibility based on a 800% Medicare rate multiplier; and (3) waive (or forgive) the out-of-network cost-sharing responsibilities the members must pay under the plans.  (*Id.* ¶¶ 77-79, 81-

4

88.)  Defendants hid their billing schemes from Cigna.  They never disclosed to Cigna that the ASCs charge Cigna and Cigna's plan members based on completely different rates for the same services, or that the ASCs reduce patients' co-insurance and routinely waive deductibles.  (*Id.* ¶¶ 78, 92-96.)  SurgCenter maintains a partial ownership of each ASC and thus retains a portion of the unlawful profits the ASCs receive from these schemes.  (*Id.* ¶ 73, 75.)

An example of Defendants' billing schemes is instructive.  Say a Cigna member has a co-insurance of 30% for out-of-network services and 10% for in-network services, and a Defendant ASC has billed Cigna $100,000 for services it provided to that member. Assuming Cigna allows the entire amount, the member's 30% cost-sharing responsibility is $30,000.  And even if the ASC had (improperly) charged the member at the 10% in-network rate, the member would still owe $10,000.  But the ASCs do not even do that:  instead, they charge members 10% of an entirely different and **lower** amount (calculated by reference to 150% of Medicare rates) than what they actually charge Cigna (calculated by reference to 800% of Medicare rates).  (*See* FAC ¶¶ 82-83, 85-86.)  So in this example, if an ASC had based member cost-share on a charge of $15,000 and submitted a charge to Cigna for $80,000, which Cigna allowed in full, Cigna would calculate the member's responsibility as $24,000 (30% of $80,000), while the ASCs had actually charged the member $1,500 (10% in-network co-insurance on a $15,000 charge).  (*See id.*)  Defendants never disclose this $1,500 charge to Cigna, nor do Defendants disclose the $80,000 charge to the patient.  (*See id.* ¶¶ 91-95; *see also* ¶ 97 (alleging numerous examples where ASCs submitted claims to Cigna that were much higher than what the ASCs had charged patients).)

Cigna only discovered Defendants' schemes through its own investigation and only after overpaying millions of dollars on the ASCs' claims.  (*Id.* ¶¶ 98-99.)  When Cigna confirmed Defendants' fraud, Cigna began denying or reducing payment for the ASCs' claims to 150% of

5

Medicare—the same rate the ASCs used to charge their patients' cost-share. (*Id.* ¶ 98.) In response, the ASCs (with SurgCenter's support) orchestrated a letter campaign, misrepresenting Cigna's actions and the ASCs' practices and urging Cigna's clients to switch to one of Cigna's competitors. (*Id.* ¶¶ 101-112.) Cigna has now filed this lawsuit to put an end to Defendants' unlawful conduct, and to recover the millions of dollars in damages their actions already caused.

## ARGUMENT[3]

### I.  Issue Preclusion Does Not Bar Any of Cigna's Claims.

Defendants contend that Cigna has filed "virtually identical claims" against SurgCenter and SurgCenter-related centers in Colorado, Maryland, and Arkansas district courts, and they argue that certain of those courts' Rule 12(b)(6) rulings on certain of Cigna's state and federal claims should be afforded preclusive effect here. (Br. at 5.) Notably, Defendants fail to mention that these same courts analyzing these purportedly "identical" claims have rejected many of the same arguments Defendants now raise in their motion—and that those courts have allowed claims to proceed that Defendants argue should be precluded here. As a threshold matter, the Court should decline to apply issue preclusion at this early stage of litigation. "[I]ssue preclusion . . . is an affirmative defense" and it is "incumbent on the defendant to plead and prove such a defense." *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008). And the Seventh Circuit has made clear that "[c]omplaints need not anticipate or attempt to defuse potential defenses," including "issue preclusion." *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003); *see Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012) (reversing Rule 12(b)(6) dismissal and reminding "[j]udges [to] respect the norm that complaints need not anticipate or meet potential affirmative defenses."). Rather than reach the merits of this affirmative defense now, the Court should reserve it until summary judgment. *See Hobley v. Burge*, 2004 WL

---

[3] Unless otherwise noted, all emphasis has been added and all internal citations and quotation marks omitted.

131250131v1 0974595

1243929, at *3 (N.D. Ill. June 3, 2004) ("given [*Gypsum*] . . . , we decline to dismiss the complaint pursuant to 12(b)(6) based on collateral estoppel as suggested by Defendants.").  But even if the Court were inclined to consider Defendants' arguments on the merits, issue preclusion does not apply here.

### A.       The Prior Decisions Did Not Involve Issues "Identical" to Those Cigna Raises Here, and the Issues Here Have Not Been "Actually Litigated" on the Merits.

Defendants seek to preclude Cigna from raising three arguments, relying on Rule 12(b)(6) decisions from other district courts:  (1) a sub-part of a fraud claim;[4] (2) a sub-part of a declaratory relief claim;[5] and (3) an equitable restitution claim under ERISA.  (Br. at 7.)  But *none* of those decisions even purported to address the issues Cigna's Complaint raises here—that is, the sufficiency of Cigna's fraud allegations *under Indiana law*, and the sufficiency of Cigna's declaratory relief and ERISA equitable restitution claims *under Seventh Circuit precedent*.  As a result, those cases do not involve issues "identical" to issues here, nor have these issues previously been "actually litigated" on the merits.  *See Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 392 (7th Cir. 1986) (issues must be "identical," and same issues must have been "actually litigated and decided on the merits" in first action).

"Issues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits be the same." *Peterson v. Clark Leasing*

---

[4] *See* Br. at 9 (arguing Cigna should be "estopped from pleading misrepresentation with respect to the alleged fact that the ASCs were charging deductibles and copays based on a lower total calculated charge than the total charge submitted to Cigna.").  But Cigna has also alleged various other fraudulent aspects of Defendants' billing practices, including the fact that the ASCs charged Cigna and Cigna plan members completely different prices for the same services and never disclosed those different prices to Cigna, and the fact that the ASCs routinely waived Cigna plan members' deductibles.  (FAC ¶¶ 78, 92-96.)  Defendants do not argue that the fraud claims should be precluded with respect to these allegations, so at a minimum, Cigna's fraud-based claims should proceed on these theories.

[5] *See* Br. at 8 (arguing Cigna should be "estopped from pursuing a declaration that 'the ASCs must return all sums received from Cigna.'").  Cigna also seeks a declaration that the ASCs' claims "are not for covered services and are not payable under [Cigna-administered plans]" (FAC ¶ 190), a theory Defendants do not argue should be precluded.

131250131v1 0974595

*Corp.*, 451 F.2d 1291, 1292 (9th Cir. 1971).[6]  And when the first action involves claims under a different body of law than the second, a different legal standard *does* apply, making issue preclusion improper—even if the factual issues are the same.  *See Boomer v. AT&T Corp.*, 309 F.3d 404, 422 n.10 (7th Cir. 2002) (rejecting argument that AT&T was estopped from arguing that an arbitration clause in its contract was valid due to an earlier decision which had found it unconscionable, and explaining that "[i]n [the first case], the question of unconscionability involved California law, whereas in this case it involves Illinois law, and *therefore the issues are not the same*."); *Wasau Underwriters Ins. Co. v. United Plastics Group, Inc.*, 2010 WL 538544, at *5 (N.D. Ill. Feb. 10, 2010) ("[w]here the facts *or* legal rules governing a specific case or issue differ, collateral estoppel does not apply," and "[w]hen an issue has been tried in a prior case *but under another state's law*, collateral estoppel does not bar relitigation of that issue in the Seventh Circuit.") (citing *Boomer*).  These well-settled principles bar issue preclusion here.

**Cigna's fraud claim is not precluded.**  Defendants contend that Cigna should be precluded from raising a sub-part of a fraud claim Cigna previously brought under Colorado and Maryland law.  *See Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, 2015 WL 1041515, at *1 n.2 (D. Colo. Mar. 6, 2015).  But a district court in Maryland held that Cigna's fraud claims based on the same conduct under Maryland law could go forward, even after *Arapahoe* found otherwise.  *Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, 2015 WL 4394408, at * 19, *23 (D. Md. Jul. 15, 2015) ("The Cigna entities assert a fraud claim against all ASCs based on the alleged misrepresentations and omissions in the ASCs' claim forms" and "assert a claim against SurgCenter for aiding and abetting fraud.").  Defendants do not explain

---

[6] *Accord Coleman v. C.I.R.*, 16 F.3d 821, 830 (7th Cir. 1994) (issues in the second suit "must be identical in all respects to the issue decided in the first suit, with no change in the controlling facts *and* applicable legal rules.").

131250131v1 0974595

why this Court should follow the interpretation of Maryland state law by a Colorado court rather than one in Maryland, because no such explanation exists.

Just as fatal to Defendants' argument, Cigna brings fraud claims under **Indiana law**, since that is where Defendants ASCs are located.  (*See* FAC ¶¶ 19-29, 35.)  *Arapahoe*'s ruling on Cigna's fraud allegations under **Colorado and Maryland law** therefore "does not bar relitigation" of Cigna's allegations under Indiana law.  *See Wasau*, 2010 WL 538544, at *5.  Indeed, that differences in state law may well lead to different outcomes is underscored by the fact that two other courts considering Cigna's fraud claims against SurgCenter and SurgCenter-related centers (claims Defendants contend are "virtually identical" to those here, Br. at 5) allowed them to proceed.  *Tri State Advanced Surgery Ctr., LLC v. Health Choice, LLC, et al.*, 2015 WL 8522075, at *5 (E.D. Ark. Sept. 30, 2015) ("Cigna has adequately pled the elements necessary to state a claim for fraud."); *Bethesda*, 2015 WL 4394408, at * 19, *23.[7]

Defendants ignore these substantive law distinctions and discuss Cigna's allegations in the abstract.  (*See* Br. at 9-10.)  But that is not how issue preclusion works.  *Wasau*, 2010 WL 538544, at *6 (rejecting argument that issue decided under Texas law controlled that issue under Illinois law, because "even if the standards were comparable, Illinois case law and Texas case law have hardly developed along identical paths").  And that the elements of fraud in Indiana and Colorado may be comparable does not change the outcome, because the applicable case law is not the same.  *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1357 (9th Cir. 1985) ("Similarity between issues does not suffice; collateral estoppel is applied only when the issues are identical.").  Stated differently, because *Arapahoe* could not have "actually litigate[d] and decide[d] on the merits," *Gilldorn*, 804 F.2d at 392, the issue of whether Cigna stated a fraud

---

[7] *See infra* n.22 (additional decisions finding that Cigna stated fraud claims in non-SurgCenter fee-forgiving cases).

131250131v1 0974595

claim under Indiana law, preclusion is improper.  *See Wasau*, 2010 WL 538544, at *6 ("Similarities [in law] aside, [the first decision applying Texas law] never addressed the precise question . . . under Illinois law."); *Gilldorn*, 804 F.2d at 392 (issues must be "identical").[8]

**Cigna's ERISA and declaratory judgment claims are not precluded.**  Defendants' arguments that Cigna should be precluded from asserting certain parts of its ERISA equitable restitution and declaratory judgment claims (Br. at 7-9) fail for the same reasons.  Even when courts interpret the same terms of the same federal statutes and the same federal precedent, the legal standards can—and often do—vary between different circuits.  For instance, in *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006), the Court addressed equitable liens by agreement (the same issue Cigna's equitable restitution claim raises, *see* Sec. II.A.3), and concluded that when such an equitable lien exists, traditional "strict tracing" fund requirements do not apply.  *See* 547 U.S. at 365.  The Seventh Circuit has correctly interpreted this to mean that funds subject to an equitable lien by agreement can be recovered even if they are "not specifically traceable to [the beneficiary's] current assets because of commingling or dissipation."  *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 621 (7th Cir. 2008).  But the Ninth Circuit—interpreting the same statutes and precedent—went the opposite way and (in Cigna's view, incorrectly) held that an equitable lien cannot be enforced "when specifically identified funds are no longer in a beneficiary's possession."  *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1093-95 (9th Cir. 2012).[9]

---

[8] *See also In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*, 712 F. Supp. 2d 776, 798 (N.D. Ind. 2010) (collecting cases, including *Boomer*, which held that "when the earlier case was decided under another state's law, there was no identity of issue ***even if the law might have been similar***").

[9] *See also, e.g.*, *Thurber v. Aetna Life Ins. Co.*, 712 F.3d 654, 663-64 (2d Cir. 2013) (recognizing "the existence of a Circuit split on [this] issue" and "reject[ing] the Ninth Circuit's" approach).  The Eleventh Circuit recently held, consistent with the Seventh Circuit and several other circuits, that a plan can impose an equitable lien on funds even if those funds have been dissipated.  *See Bd. of Trustees of Nat'l Elevator Indus. Health Ben. Plan v. Montanile*, 593 F. App'x 903, 908 (11th Cir. 2014).  The Supreme Court has granted certiorari.  135 S.Ct. 1700 (2015).

These differences in law are not academic.  As detailed below, other courts interpreting substantially the same Cigna plan provisions as those at issue here—including a court in this circuit—have gone the opposite of the decisions Defendants cite, and held that Cigna's plans **do** create an equitable lien under *Sereboff*.  (*See infra* Sec. II.A.3.)  Cigna respectfully disagrees with the reasoning of decisions that held otherwise; but more fundamentally, this split of authority illustrates that the cherry-picked decisions Defendants cite should be afforded no preclusive effect and, indeed, are inconsistent with Seventh Circuit law.  The same concerns underlying the Seventh Circuit's reasoning in *Boomer*—that differences in law mean there is no identity of issues, *see* 309 F.3d at 422 n.10—apply with equal force here, and the Court should address Cigna's claims on their merits.

### B.     Issue Preclusion Is Improper Where, As Here, the Party Has Previously Prevailed on the Issue.

Courts have "broad discretion" in deciding when to apply issue preclusion, and preclusion typically is not allowed where "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the [party to be estopped]," as estoppel would be "unfair" to that party.  *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330 (1979).  So, where there are "inconsistent judicial rulings, the doctrine of collateral estoppel does not apply."  *Robertson v. Yamaha Motor Corp., U.S.A.*, 143 F.R.D. 194, 199 (S.D. Ill. 1992); *Joslyn Mfg. Co. v. Liberty Mut. Ins. Co.*, 939 F. Supp. 603, 611 (N.D. Ill. 1996) (no estoppel when "the determination relied on as preclusive is inconsistent with another determination of the same issue.").  For reasons detailed above, Cigna does not believe the issues here are "identical" to issues in the cases Defendants cite.  But to the extent the Court disagrees, other courts have held that Cigna's fraud and equitable lien claims against fee-forgiving providers **do** survive Rule 12(b)(6).  (*See* Sec. II.A.3 (equitable lien claims); Sec. IV.A.1 (fraud

claims).)  The fact that Cigna has already prevailed on similar claims elsewhere makes it "unfair" to preclude Cigna from raising them here.  *See Parklane*, 439 U.S. at 330; *T.G. v. Remington Arms Co., Inc.*, 2014 WL 1310285, at *9 (N.D. Okla. Mar. 28, 2014) (noting that "existence of [prior] inconsistent verdicts weighs heavily against" estoppel, and declining to apply it).

## II.    Cigna Has Adequately Pled Its Federal Claims.

### A.    Cigna Has Pled an ERISA Section 502(a)(3) Claim (Count VIII).

With Count VIII, Cigna seeks to recover overpayments under ERISA § 502(a)(3) and also seeks an injunction requiring Defendants to submit to Cigna only those charges that they actually charge Cigna's plan members.  Defendants do not challenge this claim to the extent it seeks injunctive relief (Br. at 1 n.1, 11), and so that part of Count VIII indisputably survives dismissal.  Defendants' arguments as to the rest of Count VIII are unavailing.

### 1.    Cigna Need Not Prove Up Every Claim at the Pleadings Stage.

Defendants fault Cigna for not including "documentation regarding each plan" at issue and for "fail[ing] to assert specific claim-by-claim allegations with respect to each plan under which it is seeking relief."  (Br. at 13.)  This fundamentally misapprehends Cigna's burden under Rule 8, which requires only a "short and plain statement of the claim showing that [Cigna] is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  *Twombly*'s gloss on Rule 8 also "does not impose a probability requirement"; instead, "it simply asks for enough facts to raise a reasonable expectation that discovery will reveal evidence of [illegal conduct]."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *accord, e.g.*, *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (*Twombly* requires only for plaintiff to "give enough details about the subject-matter of the case to present a story that holds together.").  And, of course, evidence is not required at the pleading stage.  *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014 (reversing dismissal where "the district court . . . seemed to require evidence at the pleading stage").

131250131v1 0974595

Cigna's detailed allegations provide Defendants with ample notice of the unlawful conduct at issue, and the Complaint easily clears Rule 8's threshold. Cigna alleges that its plans do not reimburse charges that Cigna's plan members are not obligated to pay (FAC ¶¶ 60-63), that Defendants implemented dual-pricing and fee-forgiving schemes whereby they submit false charges to Cigna (*e.g.*, *id.* ¶¶ 70-97), and that as a result of these schemes, Cigna has been defrauded out of millions of dollars and suffered other injuries too. (*Id.* ¶¶ 99-100). Cigna also identified the plan terms that Defendants violated (*e.g.*, *id.* ¶¶ 54, 61-63) and alleged that these terms are "representative" of Cigna's plans. (*Id.* ¶ 63.) Finally, the Complaint even includes charts of the claims submitted by the ASCs at issue in Cigna's complaint. (FAC, Exs. 3A-3K.) In arguing that Cigna has not "include[d] necessary documentation" to support each and every claim (*see* Br. at 13), Defendants essentially contend that Cigna has not backed up its claims with evidentiary proof. Those are arguments for summary judgment or trial, not a motion to dismiss.

A recent decision rejecting these same arguments is instructive. *See Conn. Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP*, 2015 WL 5122269 (D. Conn. Aug. 31, 2015). There, defendants—other out-of-network surgical centers who defrauded Cigna through a fee-forgiving scheme—also contended that Cigna's plans were not uniform and that the complaint "'cherry-picked [a] handful of the plans at issue.'" *Id.* at *5; *see* Br. at 13 (arguing that Cigna "glosses over critical distinctions" among the plans[10]). The court easily rejected these arguments, noting that Cigna's complaint "provides the terms of the plans that specifically prohibited the surgical centers' conduct"—same as the Complaint does here. 2015 WL 5122269, at *5. Thus, it was "unnecessary for Cigna to attach all . . . plans [at issue] to the complaint, as doing so could

---

[10] Defendants assert that not all of Cigna's plans are identical and that there are supposedly "critical" distinctions between them. (*See* Br. at 13.) But tellingly, Defendants do not contend that the plan provisions that are actually at issue—for instance, provisions related to Cigna's discretionary authority to administer the plans, various reimbursement limits, and Cigna's recovery of overpayments (*see, e.g.*, FAC ¶¶ 40-41, 54, 61-65)—differ in any way between the plans, let alone that any such distinctions in those provisions are "critical."

13

contradict Rule 8's requirement that the complaint provide a short and plain statement of the claim." *Id.* at *6. Just so here: the Complaint "adequately and succinctly alerts [Defendants] of the violated plan terms and provides proof of the [claims at issue] . . . reflecting discrepancies between the amounts billed and the amounts reimbursed." *Id.* Rule 8 requires nothing further.

### 2.    Cigna Can Maintain a Section 502(a)(3) Claim for All ERISA Plans.[11]

Defendants argue "Cigna lacks standing" to bring its ERISA claims. (Br. at 13.) But as a fiduciary (FAC ¶ 40), Cigna has a right to enjoin conduct that "violate[s] the terms of the plan[s]" and to "obtain other appropriate equitable relief . . . to redress such violations." *See* 29 U.S.C. § 1132(a)(3). Defendants again do not challenge the injunctive portion of Cigna's ERISA count (*see* Br. at 11); and as detailed in Sec. II.A.3, the rest of it seeks proper equitable relief.

To the extent Defendants contend Cigna has no Article III standing, this argument can be disposed of quickly. Defendants concede that some plans are fully insured and that "Cigna has standing" to assert claims for them. (Br. at 14.) As another court already held (which Defendants ignore), this is enough to "satisf[y] the minimal requirement of a 'concrete and particularized' injury sufficient to confer standing on Cigna." *Arapahoe*, 2015 WL 1041515, at *3 (rejecting argument that Cigna suffers no "injury in fact" when it serves only as the plans' administrator).[12]

Defendants also contend that Cigna cannot pursue a Section 502(a)(3) claim for certain plans where Cigna purportedly is not the fiduciary. (Br. at 14.) Defendants incorrectly refer to this issue as one of "statutory standing" under ERISA—a concept the Seventh Circuit has noted does not exist. *See Pa. Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*, 802 F.3d 926, 928 (7th Cir. 2015) (parties' dispute over whether plaintiffs "have 'standing' to litigate under § 1132"

---

[11] Cigna does not purport to assert ERISA claims for plans not subject to ERISA. (*See* Br. at 14.) The majority of plans at issue *are* subject to ERISA, however (*see* FAC ¶ 12), and this provides no basis to dismiss Count VIII.
[12] *See also, e.g.*, *Encompass Office Solutions, Inc. v. Conn. Gen. Life Ins. Co.*, 2013 WL 1194392, at *4 (N.D. Tex. Mar. 25, 2013) (finding Cigna had standing where it "alleged damages resulting from overpayment of claims that were wrongfully submitted by [provider] for services or products that are not reimbursable" under Cigna's plans).

was a "misnomer" because "[s]tanding means the combination of injury in fact, causation, and redressability."). Rather, the question is whether Cigna's claims are within the scope of ERISA. They are, because Cigna has alleged facts showing that it acts as a fiduciary and is thus authorized to bring claims under Section 1132. In particular, Cigna alleges that "[r]egardless of the type of plan of funding, *Cigna is a fiduciary of __each__ of the plans at issue*" because "it exercises discretionary authority over plan assets and plan administration." (FAC ¶ 40; *see also id.* (describing in detail Cigna's discretionary authority and functions); FAC Ex. 1 at 56 (representative plan language granting this authority.)[13]) As another court held (which Defendants likewise ignore) regarding a similar claim Cigna brought against a SurgCenter-affiliated center, this allows Cigna to maintain a Section 502(a)(3) claim for all plans. *Tri State*, 2015 WL 8522075, at *2 ("Cigna has alleged facts to demonstrate its standing to pursue [ERISA] claims for both the employer-funded plans and the Cigna-funded plans as it has alleged that it is a plan fiduciary"). So while Plaintiffs may dispute Cigna's allegation that it is a fiduciary for all plans as a matter of fact, their disagreement about what the record may show is not fodder for a Rule 12(b)(6) motion. Nor must Cigna "attach[] [all] plans" to the Complaint to prove that it is a fiduciary, as Defendants contend. (*See* Br. at 14 n.7.) At the 12(b)(6) stage, allegations are enough. *See, e.g.*, *Tri State*, 2015 WL 8522075, at *2; *Conn. Gen. Life Ins. Co. v. Tex. Spine & Joint Hosp., Ltd.*, 6:14-cv-765 (E.D. Tex. Sept. 10, 2015) (attached as Ex. A), at 5-6 (holding that Cigna was not required to "attach the plans . . . to the complaint," and finding allegations enough to show fiduciary status).[14]

---

[13] Defendants contend that "[a]cting as a claims administrator does not, by itself, establish that Cigna is a fiduciary." (Br. at 14 n.7.) The relevance of this is unclear. Defendants' own cases acknowledge that a plan fiduciary is "anyone who exercises any discretionary authority or discretionary control respecting management of such plan." (*See id.*) That discretionary authority is precisely what Cigna alleged. (*See* FAC ¶ 40.)

[14] Court after court has held likewise. *See Sw. Surgery Ctr.*, 2015 WL 6560536, at *4 (allegations that "Cigna is given discretionary authority over the payment of benefits . . . [are] sufficient to demonstrate that Cigna is a

131250131v1 0974595

But even if the record ultimately showed that Cigna was not acting as a fiduciary for every plan at issue, Cigna would still satisfy the minimal Article III requirements through its personal injuries. Cigna has an interest in paying only valid claims to ensure its clients' interests are protected, and Cigna has also spent time and money investigating the ASCs' billing practices. (FAC ¶¶ 100.) These are cognizable Article III injuries. *See True View*, 2015 WL 5122269, at *5 (finding Article III standing based on these allegations by Cigna).[15] Defendants' argument that Cigna lacks standing to assert claims in its own name (Br. at 15) fails for that same reason: Cigna alleges it overpaid for ASCs' claims, including having paid claims from Cigna's fully-funded plans (FAC ¶ 39), and Cigna alleges it also suffered injuries from ASCs' conduct even separate from those overpayments. (*Id.* ¶ 100.) Court after court has found that nothing more is needed. *See True View*, 2015 WL 5122269, at *5; *Arapahoe*, 2015 WL 1041515, at *3; *Conn. Gen. Life Ins. Co. v. Sw. Surgery Ctr., LLC*, 2015 WL 6560536, at *3 (N.D. Ill. Oct. 29, 2015).

### 3. Cigna Has Properly Pled an Equitable Lien by Agreement.

ERISA authorizes a cause of action for "appropriate equitable relief." *See* 29 U.S.C. § 1132(a)(3). Cigna's overpayments claim seeks such relief because Cigna's plans create an equitable lien by agreement. *See Sereboff*, 547 U.S. at 364.

In *Sereboff*, the Supreme Court held that Mid Atlantic was entitled to a lien on settlement proceeds that a beneficiary received from a tort action in the amount of medical expenses Mid Atlantic had paid on the beneficiary's behalf. *Id.* at 360. The Court focused on the terms of the beneficiary's agreement, which "require[d] a beneficiary who 'receives benefits' under the plan"

---

fiduciary."); *Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*, 2014 WL 1028351, at *3 (E.D. Cal. Mar. 14, 2014) (allegations that "CIGNA is the claims administrator . . . and has discretionary authority and control regarding claims made under the plan" sufficient); *Conn. Gen. Life Ins. Co. v. Ambulatory Health Sys., LLC*, 2013 WL 1003495, at *2-3 (E.D. Tex. Mar. 13, 2013) (allegations that Cigna has "discretion or authority to adjudicate claims" sufficient); *True View*, 2015 WL 5122269, at *4 (allegations that "plan terms give Cigna discretionary authority" sufficient). Again, Defendants address none of this authority.

[15] *See also Sw. Surgery Ctr.*, 2015 WL 6560536, at *3 (finding Cigna's allegations that it overpaid for claims and "devoted time and resources to an investigation of [a surgery center's] billing procedures" sufficient).

131250131v1 0974595

to 'reimburse Mid Atlantic' for those benefits from '[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)."  *Id.* at 359.  The Court found that this language created an equitable lien by agreement, as it: (1) "specifically identified a particular fund, distinct from the [beneficiary's] general assets" (*i.e.*, any "recoveries from a third party" by lawsuit or settlement); and (2) identified "a particular share of that fund to which Mid Atlantic was entitled" (*i.e.*, "that portion of the total recovery which is due [Mid Atlantic] for benefits paid")."  *Id.* at 364.

Under Cigna's plans, "[w]hen an overpayment has been made by Cigna, Cigna will have the right at any time to . . . recover that overpayment from the person to whom or on whose behalf it was made."  (FAC ¶ 41 (quoting plan).)  As in *Sereboff*, these terms:  (1) "specifically identify a particular fund, distinct from [Defendants'] general assets—*i.e.*, payments made by Cigna or the plans to [Defendants]"; and (2) "specifically identify a particular share of that particular fund to which Cigna is entitled—*i.e.*, the amount of the overpayment."  (*Id.* ¶¶ 41-42.)

Applying *Sereboff*, courts analyzing Cigna's overpayment provisions have held that they create an equitable lien by agreement.  In those cases, Cigna likewise sought overpayments from surgical centers that "defrauded Cigna using fee-forgiving billing practices" (*True View*, 2015 WL 5122269, at *1), "engaged in fee-forgiving practices" (*Sw. Surgery Ctr.*, 2015 WL 6560536, at *1), and "engaged in a practice known as 'cost-share waiver." *Conn. Gen. Life Ins. Co. v. Roseland Ambulatory Ctr. LLC*, 2013 WL 5354216, at *1 (D.N.J. Sept. 24, 2013).  Each court concluded that Cigna's plans create an equitable lien for overpayments to these fee-forgiving providers based on overpayment provisions that are the same or substantially similar to those at issue here.  *Sw. Surgery Ctr.*, 2015 WL 6560536, at *5 ("like the plans in *Sereboff*, [Cigna's plans] contain recovery provisions that grant Cigna the right to recover overpayments" and thus "create[] an 'equitable lien by agreement'"); *True View*, 2015 WL 5122269, at *6 (finding

equitable lien because Cigna "seeks specific funds—overpayments resulting from the defendants' billing practices" and "in a specific amount—[the amount of] total overpayments."); *Roseland*, 2013 WL 5354216, at *3 ("Cigna has "identified a provision in its plan that entitles it to recoupment for overpayments made and claims that Defendant is in possession of such funds, making [Cigna's] claim equitable in nature.").[16]   Cigna relies on the same overpayment provisions in this case (FAC ¶¶ 41-42), and the same result should follow.[17]

Defendants raise several unavailing arguments to the contrary.   First, Defendants insist that Cigna has not pled any "specifically identifiable funds."   (*See* Br. at 16.)   But consistent with Seventh Circuit precedent, Cigna's plans ***do*** identify both a specifically-identifiable fund (the payments to Defendants) as well as the share of that fund to which Cigna is entitled (the amount of the overpayment).   That is just what *Sereboff* requires.   *See, e.g.*, *O'Brien-Shure v. U.S. Labs., Inc. Health & Welfare Ben. Plan*, 2013 WL 3321569, at *2 (N.D. Ill. July 1, 2013) (finding an equitable lien where the agreement "identif[ied] the specific fund from which recovery is sought—the long-term disability benefits that [defendant] paid [plaintiff]—and the specific share of that fund to which [defendant] is entitled—the amount of overpayment"); FAC ¶¶ 41-42.

Next, Defendants' argument that Cigna must identify "funds set aside in distinguishable, separate accounts" (*see* Br. at 16) is foreclosed by *Sereboff*—which holds that "no tracing requirement . . . applies to equitable liens by agreement."   547 U.S. at 365; *Gutta*, 530 F.3d at 621 (defendant could seek recovery under plan agreement "even if the benefits it paid [plaintiff] are not specifically traceable to [plaintiff's] current assets because of commingling or

---

[16] The overpayment provisions here are substantively the same.   *Compare* FAC ¶ 41 *with True View*, 2015 WL 5122269, at *6; *Sw. Surgery Ctr.*, 1:14-cv-08777, Dkt. 1 ¶ 64; *Roseland*, 2013 WL 5354216, at *1.

[17] Other courts have likewise found that ERISA plan provisions authorizing administrators to recover overpayments create an equitable lien by agreement.   *See, e.g.*, *Reliance Standard Life Ins. Co. v. Smith*, 2006 WL 2993054, at *2 (E.D. Tenn. Oct. 18, 2006) (recognizing administrator's "equitable lien on the . . . overpayment issued to [plaintiff]"); *Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Welfare Plan Bd. of Trustees v. S. Gate Ambulatory Surgery Ctr., LLC*, 2011 WL 4080054, at *3 (N.D. Cal. 2011) ("Plaintiffs' plan document states that overpayments received by third party providers may be recovered by the plan.   [ . . . ]   This is sufficient.").

dissipation."); *Sw. Surgery Ctr.*, 2015 WL 6560536, at *4 (rejecting argument that Cigna could only establish a lien if "the funds sought could be traced to a clearly identifiable account, separate from [defendant's] general assets.").[18]   Cigna has identified the funds at issue—overpayments due to Defendants' unlawful billing.  Whether these funds are ***now*** segregated or are in "ASCs' general accounts" (Br. at 17) does not matter, because Cigna's plans "created an equitable lien by agreement ***the moment*** [Defendants] received those funds from [Cigna]."  *See Rozoginski v. Hartford Life & Acc. Ins. Co.*, 2007 WL 2409810, at *9 (N.D. Ill. Aug. 21, 2007).  Put otherwise, these funds became the subject of an equitable lien "[a]t the instant" Defendants received Cigna's overpayments, and thus were "traceable even though the money . . . was not segregated."  *Gutta*, 2006 WL 2644955, at *26.

Finally, the out-of-circuit district court decisions that dismissed Cigna's equitable lien claims are inconsistent with Seventh Circuit precedent and, in Cigna's opinion, wrongly decided.  (*See* Br. at 16-17.)  In *Arapahoe*, the court noted that Cigna did not allege that the overpayments were "in a separate fund," "paid by any third party," or were "otherwise distinct from the ASCs' general assets."  *See* 2015 WL 1041515, at *4; *see also Tri State*, 2015 WL 8522075, at *3 (similarly noting that Cigna had sought recovery "from Tri State's general assets").  But *Sereboff* and this circuit's precedent is clear that when an equitable lien by agreement exists, the funds need not be in a separate account.  *See Gutta*, 530 F.3d at 621; *supra* n.18.[19]  And Cigna ***has*** identified the funds at issue (payments to Defendants) and the share to which Cigna is entitled

---

[18] *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Lewis*, 871 F. Supp. 2d 771, 776 (N.D. Ill. 2012) ("an equitable lien by agreement . . . [is] not dependent on the ability to strictly trace the . . . fund[s]"), 745 F.3d 283, 284 (7th Cir. 2014) (even though "settlement funds have been dissipated," "[t]he plan wasn't required to trace the settlement proceeds.  Its equitable lien automatically gave rise to a constructive trust of the defendant's assets.").

[19] Indeed, even dissipation of the funds does not bar an equitable lien by agreement—so commingling certainly cannot preclude it.  *See Gutta*, 530 F.3d at 621; *Bd. of Trustees of the Nat'l Elevator Indus. Health Ben. Plan v. Montanile*, 2014 WL 8514011, at *10 (S.D. Fla. Apr. 18, 2014) ("the overwhelming majority of circuits . . . have held, after interpreting *Sereboff*, that a beneficiary's dissipation of assets is immaterial when a fiduciary asserts an equitable lien by agreement.") (collecting cases, including *Gutta*).

(the amount of the overpayments), separate from Defendants' general assets.  *See* FAC ¶¶ 41-42; *True View*, 2015 WL 5122269, at *6 (recognizing these same plan provisions identify specific funds); *Sw. Surgery Ctr.*, 2015 WL 6560536, at *5 (same).  Finally, funds need not have been paid by a third party to be subject to a lien.  *See Gutta*, 530 F.3d at 616, 622 (recognizing insurer Standard's equitable lien over "disability benefits *it* [Standard] had paid to Gutta."); *see also Makoul v. Prudential Ins. Co. of Am.*, 2013 WL 3874045, at *4 (N.D. Ill. July 25, 2013) (recognizing Prudential's equitable lien for "overpayments *it* [Prudential] made due to [plaintiff's] receipt of SSDB [Social Security disability benefits]," and noting that Prudential was "not attempting to force [plaintiff] to disgorge SSDB [*i.e.*, the third-party payments]").

The out-of-circuit *Bethesda* decision is inconsistent with this precedent.  There, the court held that although the overpayment provisions grant Cigna the "right to recoupment of *some* funds from a *plan member*," it was not "obvious" how this language creates a lien "on every overpayment of benefits made by [Cigna] to a *provider*."  2015 WL 4394408, at *9 (first emphasis in original).  But having received claim assignments from Cigna's plan members (FAC ¶ 43), Defendants "stand[] in the shoes of the member[s]" (*id.*) and are subject to these same overpayment provisions.  And while the *Bethesda* court relied on the fact that another provision in Cigna's plans uses the word "lien" while the overpayment provision does not, *see* 2015 WL 4394408, at *10, there is no magic to that word.[20]  What matters is whether the plan asserts a right to:  (1) a particular fund distinct from general assets; and (2) a particular share of that fund to which the plan is entitled.  *See Sereboff*, 547 U.S. at 364.  As multiple courts found, Cigna's overpayment provision does both.  *See supra* at 17-18.  Finally, the overpayment provision does not grant Cigna the right to recoup only "some" of the funds "but not the particular payment

---

[20] *See, e.g.*, *Sereboff*, 547 U.S. at 359, 364 (finding an equitable lien even though the relevant plan provisions did not use the word "lien"); *Gutta*, 530 F.3d at 620-21 (same).

made," as *Bethesda* suggests.  *See* 2015 WL 4394408, at *9.  Cigna's plans provide that "[w]hen

an overpayment has been made," Cigna has the right to "recover ***that*** overpayment" or to "offset

the amount of ***that*** overpayment from a future claim payment."  (FAC ¶ 41.)  This allows Cigna

to recover not just "some" funds, but all overpayments in the amount of those overpayments.[21]

### B.        Cigna Has Pled a Declaratory Judgment Claim (Count IX).

Cigna seeks a declaratory judgment that: (1) the ASCs' claims "are not for covered

services and are not payable" under Cigna's plans; and (2) "the ASCs must return all sums

received from Cigna."  (FAC ¶ 190.)  Defendants do not dispute that Cigna has pled the required

elements of this claim, and instead contend that these requests are duplicative of Cigna's other

counts.  (*See* Br. at 11-12.)  This is incorrect.  First, Cigna's ERISA claim for injunctive relief

(which Defendants do not challenge) does not moot the first part of the declaratory judgment

claim.  The injunction will require ASCs to submit truthful claims to Cigna ***going forward*** (FAC

¶ 182), while Cigna's request for the Court to declare that the ASCs' claims "are not for covered

services and are not payable" (*id.* ¶ 190) covers the ASCs' ***past*** claims too.  Second, Defendants

are wrong in arguing that the second part of Cigna's declaratory judgment count—which seeks a

declaration that ASCs must "return all sums received from Cigna" (*id.* ¶ 190)—is simply a

"recasting . . . [of the ERISA] restitution claim[.]"  (Br. at 12.)  The ASCs here submitted

disputed claims under both ERISA and non-ERISA plans (*see* FAC ¶ 46), and Cigna's request

for declaratory judgment on this point is not limited to the ERISA claims.  (*See id.* ¶ 190.)  Thus,

the declaratory judgment claim is broader than Cigna's ERISA claim; and to the extent there is

any doubt about whether Cigna's declaratory relief claim is duplicative, those questions should

not be resolved on the pleadings.  *Cf. Bethesda*, 2015 WL 4394408, at *25 (denying motion to

---

[21] That Defendants may read these provisions differently is beside the point.  When there are "conflicting views of the plan documents," dismissal is improper; such arguments raise questions "to be decided on summary judgment or at trial, with the benefits of discovery and a full evidentiary record."  *Int'l Longshore*, 2011 WL 4080054, at *3.

dismiss Cigna's declaratory judgment claim as "premature," because on the pleadings, "it [was]

not clear whether the declaration sought would duplicate or supplement the other relief").

### III.   ERISA Does Not Preempt Cigna's State-Law Claims Because These Claims Implicate Defendants' Independent Legal Duties.

Defendants argue that Cigna's state-law claims "clearly have a 'connection with' ERISA

plans" because those claims purportedly arise "from Cigna's interpretation of plan language and

Cigna's contentions regarding the parties' obligations under the plan's terms."  (Br. at 18, 20.)

As an initial matter, because not all of the plans at issue here are subject to ERISA (*see* FAC

¶ 46), preemption would not warrant dismissing Cigna's state-law claims in their entirety.

Moreover, this argument is a strawman that ignores what Cigna actually alleged.  Cigna's

state-law claims focus on Defendants' dual-pricing and fee-forgiving schemes and on their

submission of fraudulent and inflated claims to Cigna.  (*See*, *e.g.*, FAC ¶¶ 5-9, 70-100.)  Because

this misconduct exists entirely separate of any ERISA plan terms and obligations, Cigna's claims

are not preempted.  *See Aetna v. Davila*, 542 U.S. 200, 210 (2004) (ERISA preempts state-law

claims when, among other things, "there is no other independent legal study that is implicated by

a defendant's actions.").   Put otherwise, Cigna's state-law claims all implicate Defendants'

duties not to commit fraud, tortiously interfere with Cigna's relationships, or unjustly enrich

themselves—all independent legal duties—and thus, there is no preemption.

Defendants know this well, because ***every other court*** has held that Cigna's state-law

claims against SurgCenter centers are not preempted.  *Arapahoe*, 2015 WL 1041515, at \*6-7 (no

preemption because Cigna's claims "are based on whether the ASCs made material

misrepresentations, and whether those alleged misrepresentations caused the ASCs to be unjustly

enriched or caused interference with the plans.); *Tri State*, 2015 WL 8522075, at \*5 (no

preemption because "[t]he way the [ASCs] submit a claim is at issue, not how the plan processes

22

the claim."); *Bethesda*, 2015 WL 4394408, at *17 (no preemption because Cigna's "core allegations . . . relate to the fraudulent or negligent misrepresentations that the ASCs made to the Cigna entities"; noting that "[o]ther courts addressing ERISA preemption of similar state law claims involving factual scenarios analogous to the present case have also found that the state law claims were not preempted by ERISA" and collecting cases).  But despite citing to these cases repeatedly for other purposes, Defendants fail even to acknowledge this authority, let alone try to distinguish it.  Nor do Defendants reckon with Seventh Circuit case law, which also holds that there is no preemption where defendants' actions implicate an independent legal duty.  *See Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 599 (7th Cir. 2008) (no preemption of estoppel and negligent misrepresentation claims involving "legal duties" that were "entirely independent from ERISA and any plan terms").

## IV.   Cigna's State-Law Claims Are Properly Pled.

### A.   Cigna's Fraud-Based Claims All Survive Dismissal.

Defendants' arguments as to Cigna's fraud, negligent misrepresentation, and aiding and abetting fraud claims largely boil down to disagreements that Defendants have with the truth of Cigna's allegations.  (*See, e.g.*, Br. at 20-22.)  These plainly are not cognizable arguments at the Rule 12(b)(6) stage.  *Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015) (the court "must accept as true all factual allegations in the complaint.").  Defendants also ask this Court to find (contrary to well-pleaded facts) that Cigna has not alleged misrepresentation or reliance, and (contrary to well-established law) that Cigna cannot pursue its aiding and abetting or negligent misrepresentation claims.  These arguments also fail.

#### 1.   Cigna Has Pled Fraud (Count I).

The elements of fraud in Indiana are (1) a material representation of a past or existing fact that (2) was untrue; (3) was made with knowledge or reckless ignorance of falsity; (4) was relied

131250131v1 0974595

upon; and (5) proximately caused damages.  *See J & J Sports Prods., Inc. v. Kikalos*, 2015 WL 2412500, at *2 (N.D. Ind. May 21, 2015).  Cigna has pled each element.  The ASCs knowingly misrepresented their charges affirmatively and through omission by submitting false and misleading claim forms to Cigna (FAC ¶¶ 82-86, 92-98, 115-16, 118-20); Cigna relied on those false charges when paying the ASCs' claims (*id.* ¶¶ 87, 117, 121); which caused Cigna to overpay the ASCs by millions of dollars.  (*Id.* ¶¶ 99-100, 121).

Put simply, the ASCs made misrepresentations to Cigna to induce Cigna into overpaying for their claims.  These textbook fraud allegations are enough, as other courts analyzing claims by Cigna based on the same misconduct have held.  *See Bethesda*, 2015 WL 4394408, at *21 ("the Cigna entities have plausibly alleged that the ASCs may be liable for fraud or negligent misrepresentation for . . . providing misleading information about their billing practices in their claim forms."); *Tri State*, 2015 WL 8522075, at *5 ("Cigna has adequately pled the elements necessary to state a claim for fraud" where it alleged that an ASC "knowingly submitted claim forms with false and inflated representations about what its charges were intending for Cigna to rely on the false statement and pay the claim, which it did to its significant detriment.").[22]

Defendants argue that the ASCs claim forms disclosed their fraud because they "advise[d] Cigna that the ASCs calculated patients' cost-sharing obligations on a 'reduced' bill." (Br. at 24, 28-29.)  Defendants again ignore Cigna's allegations.  At most, these purported disclaimers only indicate that Defendants' billed charges for patients' copays and deductibles were reduced.  (FAC ¶ 92.)  But these forms said nothing about "how [the ASCs'] charges were

---

[22] *See also Sw. Surgery Ctr.*, 2015 WL 6560536, at *6 (finding that Cigna stated a fraud claim against a fee-forgiving ASC where the complaint alleged, same as here, that "[the ASC] (who) submitted fraudulent claims to regarding charges to patients (what) for treatment at its surgical center (where) between 2009 and 2013 (when) seeking reimbursement from Cigna based on 'grossly overstated' charges for services provided (how)."); *True View*, 2015 WL 5122269, at *9 (Cigna stated a fraud claim against a fee-forgiving ASC where the complaint "states with particularity that the surgical centers made false statements to Cigna concerning the charges actually incurred and the amount each plan member paid.").

computed"; failed to disclose that the ASCs "had not based the amount that they collected from their patients on the same rates that they submitted to Cigna for reimbursement"; and "never disclosed to Cigna . . . that [the ASCs] were charging Cigna and their patients completely different prices for the same services." (*Id.*)  Defendants likewise ignore Cigna's allegations that these forms never disclosed that "[the ASCs] routinely waived *any* deductible due and owing" or that they "reduced patients' co-insurance." (*Id.* ¶¶ 92, 94.)  These omissions rendered the ASCs' claim forms false and misleading, notwithstanding any purported disclaimers. *See Bethesda*, 2015 WL 4394408, at *21 (finding same disclaimers insufficient because the claim forms falsely "indicate[] that the insured's billed amount was the same as the amount billed to the Cigna entities," and because "the ASCs' claim forms fail to mention their other cost-sharing reduction practice"); *Tri State*, 2015 WL 8522075, at *5 (finding that these same "limited disclosures . . . do not make [Cigna's] alleged fraud claims . . . implausible.").[23]

Defendants also argue that Cigna was not "'misled' into thinking that the patient's portion of the bill was calculated the same way as the overall charge" because the claim forms stated that the insured's portion of this bill had been "reduced." (Br. at 25.)  But by stating that "the insured's portion of ***this bill*** has been reduced," the ASCs "affirmatively sought to mislead Cigna into believing that they charged the patient and Cigna a single, common price" (*i.e.*, the price reflected on the claim forms the ASCs submitted to Cigna). (FAC ¶ 93.)  That was not what the ASCs did, however.  Instead, they charged their patients by applying a ***150% multiplier*** to Medicare rates for their services (and then discounting those rates further to no more than in-network levels); but charged Cigna based on an ***800% multiplier*** to Medicare rates for those

---

[23] Of the three courts to address the language in ASCs' "disclaimers," only *Arapahoe* found that it precluded Cigna's fraud claim.  But as the *Bethesda* court recognized, despite their disclaimers, the ASCs never disclosed that they charged Cigna and patients different prices, that they reduced patients' charges and co-insurance rates, and that they routinely waived patients' deductibles.  (*See* FAC ¶¶ 5-9, 92-96.)  *Arapahoe* also ignored the materiality of these misrepresentations, since Cigna relies on the ASCs' billed charges for reimbursement.  (*See id.* ¶¶ 47, 53-56, 61-66.)

131250131v1 0974595

same services without disclosing that they had used a different and lower fee schedule when calculating patient payment responsibility.  (*Id.* ¶¶ 7, 82-86.)  As *Bethesda* recognized, the ASCs' purported disclaimer "indicates that the insured's billed amount was the same as the amount billed to the Cigna entities, when in fact the Cigna entities allege that it was a different amount entirely."  2015 WL 4394408, at *22.  This is a plausible misrepresentation.  *Id.*

Defendants try to avoid responsibility for these false statements by arguing that the ASCs had no duty to disclose to Cigna what they had actually billed and collected from patients when submitting claim forms to Cigna for reimbursement.  (Br. at 23-24.)  As an initial matter, this argument addresses only Cigna's fraud-by-omission allegations, and does not apply to Cigna's allegations that the ASCs also made affirmative misrepresentations to Cigna.  (*See, e.g.*, FAC ¶¶ 93-95.)  More fundamentally, Defendants ignore the well-established principle that one cannot "***partially*** disclose the facts as he knows them to be, yet create a false impression in the mind of the hearer by failing to fully reveal the true state of affairs."  *Thompson v. Best*, 478 N.E.2d 79, 84 (Ind. Ct. App. 1985) (emphasis in original).  Having chosen to submit charges to Cigna for reimbursement, the ASCs assumed a duty to disclose all material facts relevant to Cigna's reimbursement decision.  *Id.* ("Once Best undertook to disclose facts within his knowledge, he [had to] disclose the whole truth without concealing material facts."); *Enservco, Inc. v. Ind. Sec. Div.*, 623 N.E.2d 416, 426 (Ind. 1993) (same).  That is especially true because the ASCs had superior knowledge with respect to all aspects of their billing and charges—Cigna does not have access to that information, and therefore had to rely on the ASCs to be truthful when they submitted their charges to Cigna for payment.  FAC ¶¶ 117, 34; *see Am. United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 703 (Ind. Ct. App. 2004) ("AUL has the kind of superior knowledge of the subject which invokes . . . the duty to disclose"); *accord Bethesda*, 2015 WL

26

4394408, at \*22 ("The Cigna entities sufficiently have alleged a duty between themselves and the ASCs because they allege that the ASCs knew that the Cigna entities would be relying on the information provided in their claim forms when determining claim payment amounts.").

Defendants also argue that Cigna has not pled reasonable reliance because at times Cigna would rely on factors other than the ASCs' submitted charges when determining reimbursement. (Br. at 25.)  This argument again disregards the allegations in the Complaint: that the ASCs' submitted charges are "material to the determination of the 'allowed amount' . . . which forms the basis for determining Cigna's reimbursement payment and the plan member's cost-share responsibility," and that Cigna relies on the ASCs' submitted charges as "the starting point for determining reimbursement" for each claim in part because those amounts "set the ceiling on the amount that Cigna would pay."  (FAC ¶¶ 54-55.)[24]  That is enough.  *See True View*, 2015 WL 5122269, at \*9 (finding similar allegations that Cigna had relied on ASCs' "submitted charges as the starting point for determining reimbursement" and that those charges "set the ceiling on the amount Cigna would pay" sufficient to plead reliance).

To the extent Defendants argue Cigna could not have relied on their submitted charges because Cigna's plans limit reimbursement to a "Maximum Reimbursable Charge" ("MRC") amount (*see* Br. at 25), this again amounts to disputing Cigna's well-pled allegations, and in any event makes no sense.  Cigna's plans define the MRC by reference to "provider's normal charge for a similar service or supply." (FAC ¶¶ 54, 65.)  But because the ASCs submitted false charges,

---

[24] Defendants contend that Cigna would only "pay [their] charges if they were cheaper than charges calculated under Cigna's other formulas, which are derived from Medicare and *other* providers' rates," and that Cigna thus relied on factors other than the ASCs' billed charges.  (Br. at 25 (emphasis in original).)  But to determine if the ASCs' charges were lower than charges calculated under other formulas, Cigna has to know the ASCs' **true** charges—which they never submitted to Cigna.  Had they done so, Cigna would have relied on them for reimbursement.  (*See* FAC ¶¶ 54-56; *Bethesda*, 2015 WL 4394408, at \*22 ("Reliance on the plan terms and other information in processing claims does not undermine the allegation that the Cigna entities also relied on the [ASCs'] charges").)

Cigna could not determine their "normal charge" and thus could not determine the MRC.[25]

Defendants also seek to defend the statement on their claim forms that Cigna members had "paid" their deductible and copay (FAC ¶ 95), calling Cigna's allegations on this point "wholly implausible." (Br. at 26.) Not so. Cigna alleged that Cigna plan members are obligated to pay "deductibles and coinsurance payments," that "the ASCs often waived deductibles for Cigna members" and that as a result, the ASCs' statements that Cigna's plan members had "paid" their deductible and copay were false. (FAC ¶¶ 57, 83, 95; *id.* ¶ 80 (quoting SurgCenter's billing manual, which instructed the ASCs that "[d]eductible amounts are waived").) Moreover, while Defendants assert that the ASCs do not know patients' deductible balances (Br. at 26), the Complaint explains that they receive notice of patients' unmet deductibles through "routine pre-procedure 'eligibility and benefits' calls, whereby Cigna's customer-service representatives inform [the ASCs] about . . . unmet deductibles." (FAC ¶ 44.) Defendants' disagreement with these allegations does not mean they are not well pled. Finally, Defendants claim that Cigna could not have relied on their statements that Cigna members had "paid" their deductible, because the deductible determination is made after they submit a claim to Cigna. (Br. at 26.) This, too, ignores Cigna's allegations that the ASCs calculate plan members' cost-sharing responsibility *before* submitting claims to Cigna. (FAC ¶¶ 82-86.) And Defendants do not explain why it matters whether deductibles were to be calculated and paid before or after the ASCs submitted their claim forms. Cigna expected those deductibles to be paid either way, since

---

[25] The cases cited by Defendants are not to the contrary. In *Curtis*, an Illinois bankruptcy court found no justifiable reliance following a trial because one plaintiff "had virtually no recollection of anything the Debtor said or did upon which [the plaintiff] relied" and the other plaintiff's testimony made clear that he "was uninterested in the details of the transaction or in anything else the Debtor had to say." *In re Curtis,* 2006 WL 1506209, at * 9-10 (Bankr. C.D. Ill. May 24, 2006) (applying the Bankruptcy Code). Likewise, in *Brigham* a New York court reversed the conviction of a medical provider for engaging in a scheme to defraud only where the inflated charges submitted by the provider "had *no bearing* on what the [insurance] companies paid." *People v. Brigham,* 261 A.D.2d 43, 48-52 (N.Y. 1999) (applying New York law). Here, the opposite is true: Cigna relies on the ASCS' charges to calculate the amount that Cigna determines to be covered by its plans, and to determine Cigna's reimbursement payment and the plan member's cost-share responsibility. (FAC ¶¶ 54-56.)

131250131v1 0974595

the ASCs expressly represented as much on their electronic claim forms.[26]

### 2.      Cigna Has Pled Aiding and Abetting Fraud (Count II).

"It is well settled law that he who counsels, advises, abets, or assists another to commit a tort, or joins in its commission, is responsible for all the injury done." *Bates Motor Transp. Lines v. Mayer*, 213 Ind. 664, 672 (1938). Here, Cigna has pled that the ASCs' fraudulent scheme was designed and implemented at the direction of SurgCenter, and that SurgCenter developed the fraudulent billing model used by the ASCs and provided the ASCs with the misleading forms to be used in communications with patients and insurers. (FAC ¶¶ 70-99.) In response, Defendants claim that "none of [SurgCenter's business activities] are tortious," but Cigna need only plead that SurgCenter aided and abetted the ASCs' tortious conduct—not that SurgCenter committed an independent tort itself. *Bates*, 213 Ind. at 672; *see also Schmidt Enters., Inc. v. State,* 170 Ind. App. 628, 638 (1976) ("All who knowingly enter a fraudulent scheme become liable for the harm caused by the scheme—even if their part of the scheme does not entail making fraudulent representations."). Accordingly, Cigna has adequately pled that SurgCenter aided and abetted the ASCs' fraudulent conduct.[27] *See Bethesda*, 2015 WL 4394408, at *23 (finding that Cigna stated aiding and abetting fraud claim by alleging, same as here, that "SurgCenter not only knew about the purportedly fraudulent billing scheme, but designed, implemented, and assisted the ASCs in carrying out the scheme."); *Tri State*, 2015 WL

---

[26] Defendants also argue that Cigna "is not harmed by a failure to collect [deductibles] in any way." (Br. at 26 n.12.) This again ignores Cigna's allegations. By waiving deductibles and also circumventing Cigna's cost-sharing mechanisms in other ways, the ASCs induced visits from members who otherwise would not have used their services, leading to increased costs to the plans. (FAC ¶ 57-59.)

[27] Defendants argue that Cigna does not plead "that either the ASCs or SurgCenter violated a 'duty imposed by law.'" (Br. at 26.) But the case Defendants cite for this proposition says only that "[t]he defense of independent contractor is not available where a recovery is sought for damages resulting from acts done in violation of a duty imposed by law." (*Id.* (citing *Bates*, 213 Ind. at 672).) In any event, Cigna has alleged that the ASCs violated various legal duties, including duties not to make affirmative misrepresentations to Cigna and to disclose all material facts relevant to Cigna's reimbursement decision. *See* Sec. IV.A.1. And Defendants' reliance on *Peters v. Great Dane Trailers, Inc.*, 1996 WL 698028 (N.D. Ind. Oct. 10, 1996) (Br. at 27) is misplaced, as Cigna has not asserted personal liability claims against SurgCenter's corporate officers.

8522075, at *5 (finding that Cigna stated "aiding and abetting fraud" claim against SurgCenter).

### 3.    Cigna Has Pled Negligent Misrepresentation (Count III).

"In Indiana, a defendant is liable for negligent misrepresentation when four elements are met: (1) the defendant, in the course of his business . . . supplies false information for the guidance of others in their business transactions; (2) the defendant fails to exercise reasonable care or competence in . . . communicating the information; (3) the plaintiff justifiably relies upon the information . . . and (4) the plaintiff suffers pecuniary loss as a result."  *Harrison Mfg., LLC v. Bienias*, 2013 WL 6486668, at *6 (S.D. Ind. Dec. 10, 2013).  Each element is met here: (1) in the course of their business, the ASCs submitted false and misleading claims to Cigna (FAC ¶ 133); (2) they failed to exercise reasonable care in communicating with Cigna by sending Cigna false charges that were different from the rates the ASCs used to charge patients (*id.* ¶ 136); (3) Cigna relied on the ASCs' false charges when processing claims (*id.* ¶¶ 134, 137), (4) paying millions of dollars to the ASCs as a result.  (*Id.* ¶ 138.)

Faced with these well-pleaded facts, Defendants claim that "[n]o Indiana court has held that [the tort of negligent misrepresentation] applies to business dealings between two companies."  (Br. at 28.)  Defendants do not explain why that distinction matters; in any event, they are wrong.  *See Bienias*, 2013 WL 6486668, at *6-8 (holding owner of wood products supplier liable for negligent misrepresentation based on dealings with furniture manufacturer); *U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 748 (Ind. 2010) (recognizing negligent misrepresentation claim brought by a bank against a title commitment issuer).

Defendants also argue that Cigna's claim is barred by the "economic loss rule."  (Br. at 28-29.)   But the Indiana Supreme Court has repeatedly recognized that negligent misrepresentation claims are an exception to that rule.  *See, e.g.*, *U.S. Bank*, 929 N.E.2d at 745-46 (negligent misstatements are an exception to the economic loss rule); *Greg Allen Constr. Co.,*

*Inc. v. Estelle,* 798 N.E.2d 171, 174 (Ind. 2003) ("negligent misrepresentation may be actionable and inflict only economic loss").[28]  Moreover, Cigna has also suffered harms from the ASCs' conduct that are not purely economic, including the lost time and effort spent investigating and corresponding with the ASCs' regarding their billing practices.  (FAC ¶ 100.)[29]

Finally, Defendants ask this Court to disregard the ASCs' superior knowledge of their billing practices and that they knew Cigna would rely on their claims for reimbursement.  (Br. at 29.)  To do so would ignore the Supreme Court of Indiana, which relied on these same factors in allowing negligent misrepresentation claims to go forward.  *See U.S. Bank, N.A.*, 929 N.E.2d at 750 (recognizing bank's negligent misrepresentation claim against title commitment insurer in part because the title insurer "had superior knowledge and expertise" and "deliberately provided specific information in response to [the bank's] request.").

### B.    Cigna Has Pled Unjust Enrichment (Count IV).

The elements of unjust enrichment under Indiana law are: "(1) a benefit conferred upon another at the express or implied request of this other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment." *Woodruff v. Ind. Family & Soc. Servs. Admin.*, 964 N.E.2d 784, 791 (Ind. 2012).  The ASCs do not dispute that Cigna has pled these elements—nor could they, as the Complaint alleges that: (1) Cigna conferred a benefit on the ASCs by paying their grossly inflated charges (FAC ¶ 144-45); (2) allowing the ASCs to retain these benefits—which they obtained through fraudulent

---

[28] While the Indiana Supreme Court has found a negligent misrepresentation claim barred by the economic loss rule in *Indianapolis-Marion County Public Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 741 (Ind. 2010), it did so because "the economic loss rule is particularly applicable in the construction setting" and that case involved a "major construction project."  *Id.* at 737-40.  The same rationale does not apply here.

[29] Defendants also recycle their arguments that Cigna has not pleaded reliance or misrepresentations (Br. at 29), but these arguments fail for the same reasons discussed in Sec. IV.A.1.

131250131v1 0974595

dual-pricing and fee-forgiving schemes—would be unjust (*id.* ¶¶ 70-100, 142); and (3) the ASCs

expected and received payment based on their grossly inflated charges.  (*Id.* ¶¶ 70, 88, 145.)

Instead, Defendants contend that Cigna's unjust enrichment claim is barred because a

"valid contract defines the obligations of the parties."  (Br. at 30-31.)  Defendants misread

Cigna's allegations.  Cigna **has not** alleged that it has a contract with the ASCs; just the opposite.

(FAC ¶ 4 (the ASCs "do not have contracts with Cigna.").)  The contracts to which Defendants

point—"Cigna's plans" (Br. at 29)—are between Cigna and its **plan members**, not the ASCs.

And it is not enough for Defendants to point to some contract that in some way relates to Cigna's

allegations, because "[w]here a contract exists but the defendants in question are not parties to

it . . . unjust enrichment recovery may still be appropriate."  *Marquette Bank v. Brown*, 2015 WL

1505685, at *13 n.31 (S.D. Ind. Mar. 31, 2015) (citing *Zoeller v. E. Chi. Second Century, Inc.,*

904 N.E.2d 213, 221 (Ind. App. 2009) ("There was an express contract in this transaction, but it

was not one to which the Attorney General or the State were parties . . . .  That transaction is thus

not a bar to the Attorney General's claim for unjust enrichment.").  Finally, as there was no

contract between Cigna and the ASCs, Cigna did not need to plead that the plans are "void or

unenforceable," as Defendants suggest.  (Br. at 31.)

*Advanced Ambulatory Surgery Center v. Cigna Healthcare of Ill.* ("*AASC*"), 2014 WL

4914299 (N.D. Ill. Sept. 30, 2014) (Br. at 30)—which involved a provider's unjust enrichment

claim **against** Cigna, brought after Cigna denied payments for fee-forgiving—is inapposite.  The

*AASC* provider's claim was "a traditional challenge to an ERISA plan administrator's [*i.e.*,

Cigna's] interpretation of the terms of the plan," *id.* at *2, because it was premised on the

provider's allegation that Cigna had "determined incorrectly that it was entitled to withhold

payment" for fee-forgiving under the terms of its plans.  *See id.* at *1.  Here, though, **Cigna** has

brought an unjust enrichment claim *against* the ASCs on a totally different theory of liability—that the ASCs have been unjustly enriched at Cigna's expense as a result of their improperly inflated bills, regardless of any ERISA plan terms and obligations.  (FAC ¶¶ 144-45; *compare* Count VIII (Cigna's ERISA claim against the ASCs, which does rely on ERISA plan terms).)  Indeed, each court addressing Cigna's unjust enrichment claim against SurgCenter-affiliated centers has upheld the claim's viability.  *See Arapahoe*, 2015 WL 104515, at *8; *Bethesda*, 2015 WL 4394408, at *23; *Tri State*, 2015 WL 8522075, at *5.

### C.    Cigna Has Pled Its Tortious Interference Claims (Counts V-VI).

Defendants do not challenge Count V, Cigna's claim for tortious interference with contract (Br. at 1 n.1), and so this claim survives dismissal.  Defendants' attacks on Cigna's claim for tortious interference with business advantage (Count VI) are unavailing.  The elements of this claim are: "(1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship." *Levee v. Beeching*, 729 N.E.2d 215, 222 (Ind. App. 2000).  Cigna has pled each element.  (FAC ¶¶ 101-112, 160-65.)  Defendants do not challenge that:  (1) Cigna has relationships with its plan sponsors (Br. at 1-2); (2) Defendants knew about those relationships, as evidenced by their attempts to disrupt them through letters to plan sponsors (FAC ¶¶ 101-112); (3) those letters were sent with the intention to interfere with the relationship between Cigna and its plan sponsors (*id.* ¶ 108 (describing ASCs' letter that urged Cigna's clients to switch to one of Cigna's competitors); (4) Defendants lacked any justification for their tortious actions (*id.* ¶ 164); and (5) Cigna has been damaged by this letter campaign. (*Id.* ¶¶ 112, 165.)

Defendants contend Cigna has not alleged their conduct was illegal because Cigna does not allege that the act of sending letters to Cigna's clients or their "unfair depiction" of Cigna is

illegal.  (Br. at 31-32.)   But the illegal acts supporting Cigna's claim are:   (1) the ASCs' fraudulent billing practices (the disputes over which led to these letters to begin with, and which the ASCs defended in their letters) (*see* FAC ¶¶ 101-107); and (2) the fraudulent statements contained in Defendants' letters, which "misrepresented Cigna's actions and policies" and "misrepresented the ASCs' business model."  (*Id.* ¶ 110.)[30]  As many courts held, "allegations of fraud, if proved, could satisfy the illegal conduct element."  *Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, 478 F. Supp. 2d 1076, 1089 (S. D. Ind. 2007); *ABN AMRO Mortg. Grp., Inc. v. Maximum Mortg., Inc.*, 2005 WL 1162889, at *17 (N.D. Ind. May 16, 2005) (illegal element met where plaintiff had stated a claim for civil conspiracy to commit fraud).[31]

### D.       Cigna Has Pled a Civil Conspiracy (Count VII).

Cigna has pled the elements of conspiracy under Indiana law:  "a combination of two or more persons [who take] concerted action [ ] to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means."  *Huntington Mortg. Co. v. Debrota*, 703 N.E.2d 160, 168 (Ind. Ct. App. 1998); *see* FAC ¶¶ 41-42 (alleging that SurgCenter and each ASC conspired to "carry out [] unlawful activities," including "implementing SurgCenter's 'dual pricing' and 'fee forgiving' schemes and submitting fraudulent claims to Cigna," and that Cigna has been damaged "as a result of Defendants' concerted activity.").

---

[30] Defendants attempt to defend some of the statement in the ASCs' letters, contending that they had merely disclosed possible outcomes of legal disputes or amounted to statements of existing intent.  (*See* Br. at 32.)  But the fact that Defendants urge a different interpretation of these statements does not change Cigna's allegations that the letters contained a variety of misrepresentations about Cigna and about the ASCs' business model.  (*See* FAC ¶ 110; *id.* ¶¶ 103-107.)   In any event, Defendants ignore the other misrepresentations Cigna identified.  (*See id.* ¶ 103 (misrepresentation that the ASCs' billing practices would have "little to no impact" on the client's or Cigna's payments); *id.* ¶ 105 (misrepresentation that the ASCs "have not had these issues with other insurers").)

[31] The cases Defendants cite—*Bilmoria Computer Sys. v. Amer. Online, Inc.*, 829 N.E.2d 150, 155 (Ind. Ct. App. 2005), *Grace Vill. Health Care Facilities, Inc. v. Lancaster Pollard Co.*, 896 F. Supp. 2d 757 (N.D. Ind. 2012), *Reed v. Reid*, 980 N.E.2d 277, 292 (Ind. 2012), and *Krighbaum v. First Nat'l Bank & Trust*, 776 N.E.2d 413, 421 (Ind. Ct. App. 2002)—are inapposite because no plaintiffs in those cases alleged fraud, as Cigna does here.

Moreover, "Indiana law recognizes a cause of action for damages resulting from a conspiracy." *Iom Grain, LLC v. Ill. Crop Improvement Ass'n, Inc.*, 2015 WL 195988, at *12 (N.D. Ind. Jan. 14, 2015). As Defendants recognize, the civil conspiracy claim "must be alleged with an underlying tort" (Br. at 33)—and that is just what Cigna has done here. The ASCs defrauded Cigna out of millions of dollars and caused other injuries through their "dual pricing" and "fee-forgiving" schemes, as set out above. And SurgCenter not only participated in this unlawful conduct, but helped enable it to begin with—including by developing the model for the ASCs' fraudulent schemes, helping create the ASCs, helping manage the ASCs' operations, and advising them on the very practices that gave rise to Cigna's claims. (*See* FAC ¶¶ 30-31, 74, 79-80, 84, 168.) Cigna's claims against the ASCs all survive dismissal, for reasons detailed above, and Cigna has also pled additional acts of wrongdoing by SurgCenter; thus, the conspiracy claim survives too. *See, e.g.*, *Watkins v. Penn*, 2007 WL 4224200, at *3 (S.D. Ind. Nov. 26, 2007) (denying motion for judgment on the pleadings on conspiracy claim where even if [certain defendants'] actions *alone* might be insufficient to state a claim for fraud, their participation as coconspirators . . . might nevertheless give rise to an action for civil conspiracy against them.") *Gordon v. Bank of N.Y. Mellon Corp.*, 964 F. Supp. 2d 937, 943 (N.D. Ind. 2013) (denying motion to dismiss claim for conspiracy "to commit all of the other torts alleged in the complaint"); *Iom Grain*, 2015 WL 195988, at *12 (where "fraudulent misrepresentation claim" survived summary judgment, "the civil conspiracy claim survives as well.").[32]

## CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss should be denied.

---

[32] Defendants also contend that Cigna's conspiracy claim cannot be sustained because Cigna alleges the ASCs were SurgCenter's agents. (Br. at 33 n.16.) But that is an inherently factual question that cannot be resolved based on the allegations of Cigna's complaint that SurgCenter assisted and supported the ASCs. *See, e.g.*, *Smith v. Biomet, Inc.*, 384 F. Supp. 2d 1241, 1256 (N.D. Ind. 2005) ("Under Indiana law, whether an agency relationship exists . . . is a question of fact for the jury."); *Bunger v. Demming*, 40 N.E.3d 887, 894 (Ind. App. 2015) (same).

131250131v1 0974595

DATED this 4th day of January, 2016    Respectfully submitted,

HINSHAW & CULBERTSON LLP

/s/ *Daniel K. Ryan*
Daniel K. Ryan

Joshua B. Simon
Warren Haskel
Dmitriy Tishyevich
   (*All admitted pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10016
jsimon@kirkland.com
whaskel@kirkland.com
dmitriy.tishyevich@kirkland.com
Tel:  212-446-4800
Fax  212-446-4900

*Counsel for Plaintiffs*

Daniel K. Ryan
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601-1081
Telephone:  312-704-3000
Facsimile:  312-704-3001
dryan@hinshawlaw.com

Jennifer Kalas
HINSHAW & CULBERTSON LLP
322 Indianapolis Blvd., Suite 201
Schererville, Indiana  46375
Telephone:  219-864-5051
Facsimile:  219-864-5052
jkalas@hinshawlaw.com

131250131v1 0974595

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on this 4th day of January, 2016, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.


                      */s/ Daniel K. Ryan*
                      Daniel K. Ryan

131250131v1 0974595